# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROYAL MILE COMPANY, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:10-cv-01609-JFC |
| v. | ) | |
| | ) | Judge Joy Flowers Conti |
| UPMC and HIGHMARK INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UPMC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO OBJECTIONS TO THE REPORT & RECOMMENDATION #1 OF THE SPECIAL MASTER
### [UPMC's Motion to Compel Production of Documents Under Class Request for Production No. 9]

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION……………………………………………………………………..1

I.     *NOERR-PENNINGTON* DOES NOT BAR DISCOVERY HERE ................................. 1

    A.     *Noerr-Pennington* Is A Defense To Liability Only And Does Not Apply ............ 1

    B.     *Noerr-Pennington* Does Not Apply To Private Conduct ...................................... 3

    C.     *Noerr-Pennington* Does Not Protect Sham Petitioning Or
    Misrepresentations ................................................................................................. 5

II.    THE SETTLEMENT DOCUMENTS ARE RELEVANT AND
DISCOVERABLE ..................................................................................................... 9

    A.     The Settlement Documents Are Relevant To Adequacy ....................................... 9

    B.     The Settlement Documents Are Relevant To Bias And Credibility .................... 13

    C.     The Settlement Documents Are Relevant To UPMC's Defenses In *Royal
    Mile* ..................................................................................................................... 14

CONCLUSION……………………………………………………………………..15

# TABLE OF AUTHORITIES

**Page**

CASES

*Acoustic Systems, Inc. v. Wenger Corp.*,
207 F.3d 287 (5th Cir. 2000) .................................................................................2

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988)...........................................................................................3, 4, 6

*American Home Products Corp. v. Johnson & Johnson Corp.*,
1994 WL 46522 (E.D. Pa. Feb. 15, 1994) ..............................................................7

*Andrx Pharmaceuticals, Inc. v. Biovail Corp. International*,
256 F.3d 799 (D.C. Cir. 2001)................................................................................4

*Associated Container Transportation (Australia) Ltd. v. United States*,
705 F.2d 53 (2d Cir. 1983)……………………………………………………….2

*Ballan v. Upjohn Co.*,
159 F.R.D. 473 (W.D. Mich. 1994) ......................................................................10

*Barnes Found. v. Township of Lower Merion*,
1996 WL 862451 (E.D. Pa. Dec. 23, 1996)……………………………………….2

*Bartley v. Taylor*,
2012 WL 2395479 (M.D. Pa. June 22, 2012) .........................................................7

*Barton v. RCI, LLC*,
2013 WL 1338235 (D.N.J. Apr. 1, 2013) ..............................................................11

*Byes v. Telecheck Recovery Services, Inc.*,
173 F.R.D. 421 (E.D. La. 1997)............................................................................11

*Caldon, Inc. v. Advanced Measurement Group*,
515 F. Supp. 2d 565 (W.D. Pa. 2007)....................................................................6

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)...............................................................................................6

*Cardtoons v. MLB Players Association*,
208 F.3d 885 (10th Cir. 2000) ...............................................................................4

*Catch Curve, Inc. v. Venali, Inc.*,
519 F. Supp. 2d 1028 (C.D. Cal. 2007)…………………………………………...7

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999)........................................................................6

*Continental Casualty Co. v. Peerless Industries, Inc.*,
2008 WL 4058698 (E.D. Pa. Aug. 29, 2008) ...........................................9

*Creative Montessori Learning Center v. Ashford Gear, LLC*,
662 F.3d 913 (7th Cir. 2011) ...................................................................11

*Davidson v. Citizens Gas & Coke Utility.*,
238 F.R.D. 225 (S.D. Ind. 2006)..............................................................10

*East Maine Baptist Church v. Regions Bank*,
2007 WL 1445257 (E.D. Mo. May 10, 2007) ..........................................12

*Eastern Railroad Conference v. Noerr Motor Freight*,
365 U.S. 127 (1961)................................................................................4, 5

*Echostar Satellite, L.L.C. v. ViewTech, Inc.*,
2009 WL 1668712 (S.D. Cal. May 27, 2009)............................................7

*Fidelity Federal Savings & Loan v. Felicetti*,
148 F.R.D. 532 (E.D. Pa. 1993)................................................................9

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. 2010)..............................................................11

*Hayden v. Freightcar America, Inc.*,
2008 WL 375762 (W.D. Pa. Jan. 11, 2008)............................................13

*Hinshaw v. Smith*,
436 F.3d 997 (8th Cir. 2006) ....................................................................2

*Hoffman-LaRoche, Inc. v. Genpharm, Inc.*,
50 F. Supp. 2d 367 (D.N.J. 1999) .............................................................7

*Houston Industries v. Kaufman*,
1996 WL 580418 (S.D. Tex. Mar. 7, 1996)...............................................2

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
527 F. Supp. 2d 1084 (N.D. Cal. 2007) ..................................................15

*ICOS Vision Systems Corp. v. Scanner Technologies Corp.*,
2006 WL 838990 (S.D.N.Y. Mar. 29, 2006) .............................................8

*In re Automotive Refinishing Paint Antitrust Litig.*,
2004 U.S. Dist. LEXIS 29160 (E.D. Pa. Oct. 29, 2004)..........................14

*In re Brand Name Prescription Drugs*,
  186 F.3d 781 (7th Cir. 1999) ........................................................................2, 4

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)…………………………………………15

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) ............................................................4, 5

*In re Community Bank of Northern Virginia*,
  622 F.3d 275 (3d Cir. 2010)...............................................................................10

*In re Marsh & McLennan Companies, Inc. Securities Litig.*,
  2008 WL 2941215 (S.D.N.Y. July 30, 2008) ....................................................11

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  93 F.R.D. 485 (D. Md. 1982)..............................................................................11

*In re Motor Fuel Temperature Sales Practices Litig.*,
  707 F. Supp. 2d 1145 (D. Kan. 2010) ..................................................................2

*In re Neurontin Antitrust Litig.*,
  2009 WL 2751029 (D.N.J. Aug. 28, 2009) ........................................................15

*In re Relafen Antitrust Litig.*,
  346 F. Supp. 2d 349 (D. Mass. 2004) ..................................................................7

*In re Wellbutrin SR Antitrust Litig.*,
  2010 WL 8425190 (E.D. Pa. Mar. 31, 2010)........................................................8

*Kingsepp v. Wesleyan University*,
  1992 U.S. Dist. LEXIS 13399 (S.D.N.Y. Sept. 3, 1992)....................................10

*Louisiana Wholesale Drug Co. v. Sanofi-Aventis*,
  2008 WL 169362 (S.D.N.Y. Jan. 18, 2008) .........................................................8

*Major League Baseball v. Crist*,
  331 F.3d 1177 (11th Cir. 2003) ............................................................................2

*Massachusetts School of Law at Andover, Inc. v. ABA*,
  107 F.3d 1026 (3d Cir. 1997)................................................................................4

*Montano v. Chao*,
  2008 WL 5377745 (D. Colo. Dec. 19, 2008)......................................................11

*North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*,
  666 F.2d 50 (4th Cir. 1981) ..................................................................................2

*New York Jets LLC v. Cablevision Systems*,
2005 WL 3454652 (S.D.N.Y. Dec. 19, 2005) ........................................................8

*P&B Marina L.P. v. Logrande*,
136 F.R.D. 50 (E.D.N.Y. 1991) ....................................................................2, 15

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
508 U.S. 49 (1993) ................................................................................ *passim*

*Reynolds v. Beneficial National Bank*,
260 F. Supp. 2d 680 (N.D. Ill. 2003) ..................................................................11

*Stavrides v. Mellon National Bank & Trust Co.*,
60 F.R.D. 634 (W.D. Pa. 1973) ...................................................................12, 13

*Taub v. Glickman*,
1970 WL 210 (S.D.N.Y. Dec. 1, 1970) ...............................................................11

*U.S. Futures Exchange LLC v. Board of Trade*,
2005 U.S. Dist. LEXIS 17779 (N.D. Ill. Aug. 22, 2005) ..........................................6

*United Mine Workers v. Pennington*,
381 U.S. 657 (1965).............................................................................2, 14, 15

*Vinson v. Seven Seventeen HB Philadelphia Corp. No. 2*,
2001 U.S. Dist. LEXIS 25295 (E.D. Pa. Oct. 31, 2001)..........................................13

*Wagner v. Lehman Brothers Kuhn Loeb, Inc.*,
646 F. Supp. 643 (N.D. Ill. 1986) ......................................................................11

*Walter v. Palisades Collection, LLC*,
2010 WL 308978 (E.D. Pa. Jan. 26, 2010)............................................................10

*We, Inc. v. City of Philadelphia*,
174 F.3d 322 (3d Cir. 1999)................................................................................2

*Webb v. County of Trinity*,
2010 WL 4628097 (E.D. Cal. Nov. 4, 2010)............................................................4

*Whelan v. Abell*,
48 F.3d 1247 (D.C. Cir. 1995)..............................................................................6

*Wolfe v. McNeil-PPC, Inc.*,
2012 WL 38694 (E.D. Pa. Jan. 9, 2012).............................................................2, 15

**OTHER AUTHORITIES**

FEDERAL RULE OF CIVIL PROCEDURE 23(a) .............................................................9, 10

FEDERAL RULE OF CIVIL PROCEDURE 23(g)(1)(B), (4) .................................................................10

FEDERAL RULE OF CIVIL PROCEDURE 26(b)..................................................................................9

FEDERAL RULE OF EVIDENCE 408 .....................................................................................9, 13, 15

7A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE CIVIL § 1769.1 (3d ed. 2013)...........11

4 WEINSTEIN'S FED. EVID. § 607.04 (2D ED. 2012)…………………………………………....14

## **TABLE OF EXHIBITS**

Exhibit A    Disputed Facts on Objective Merit of Settlement Petitioning (Slide 16)

Exhibit B    Plaintiffs Have Raised Credibility Concerns (Slide 6)

Exhibit C    Highmark Has Raised Credibility Concerns (Slide 5)

## INTRODUCTION

UPMC's Class Request No. 9, seeking documents related to the proposed settlement between Highmark and Class Plaintiffs, has been outstanding for seven months.  Since it was served on November 5, 2012, Highmark and Plaintiffs have opposed it on shifting grounds, first attempting to delay a ruling and, then, invoking *Noerr-Pennington*.  But, as Special Master Levie rightly recognized, *Noerr-Pennington* does not apply.  The doctrine is a defense to liability only, not a rule of evidence or a general discovery bar, and UPMC has no claims against Highmark (or Plaintiffs) in the *Royal Mile* case.  ***That fact alone ends the Noerr-Pennington inquiry***—the doctrine simply does not apply because UPMC does not seek to impose liability on Highmark or Plaintiffs in *Royal Mile*.  But even if some further inquiry were appropriate, there are at least two additional, independent reasons *Noerr-Pennington* is inapplicable:  it does not apply to private conduct, like the settlement and negotiations between Plaintiffs and Highmark, and it does not bar discovery where, as here, factual disputes exist regarding the conduct at issue.  The only question, then, is whether the settlement documents are relevant, and UPMC has shown they are with respect to (1) Plaintiffs' and their counsel's adequacy to represent the class; (2) the credibility of witnesses; and (3) UPMC's defenses.  The settlement documents should be produced.

## I.     *NOERR-PENNINGTON* DOES NOT BAR DISCOVERY HERE.

### A.     *Noerr-Pennington* Is A Defense To Liability Only And Does Not Apply.

Highmark claims the settlement documents are not discoverable because the *Noerr-Pennington* doctrine protects Highmark from antitrust liability for petitioning conduct.  *See* Doc. 192.  But Highmark's argument is a *non sequitur*—UPMC has no claims against Highmark in *Royal Mile*.  Without a claim for liability against Highmark (or Plaintiffs) based on the petitioning conduct at issue in the documents, *Noerr-Pennington* is inapplicable, and no further analysis of the doctrine is necessary.  Succinctly put: "*Noerr-Pennington* . . . is a defense to

liability premised on the defendant's actions of exercising his own private rights to free speech and to petition the government." *Hinshaw v. Smith*, 436 F.3d 997, 1003 (8th Cir. 2006). It is merely a "defense which exempts from anti-trust liability any petitioning activity." *N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 52 (4th Cir. 1981). It "provides only a defense to liability," nothing more. *We, Inc. v. City of Phila.*, 174 F.3d 322, 328 (3d Cir. 1999). It is not an immunity from suit or discovery. *Id.*; *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000); *Assoc. Container Transp. v. United States*, 705 F.2d 53, 59-60 (2d Cir. 1983). Without an attempt to impose liability for the alleged petitioning conduct, there is no defense for Highmark to invoke.

*Noerr-Pennington* does ***not*** generally prohibit the discovery or use of evidence relating to petitioning activities, a point made clear by *Pennington* itself. There, the Supreme Court stated that "of course" evidence of petitioning activity could be admitted at trial for purposes other than imposing antitrust liability for the petitioning itself. *See United Mine Workers v. Pennington*, 381 U.S. 657, 670 n.3 (1965). This is why Special Master Levie, and so many courts, have emphasized that *Noerr-Pennington* is merely a defense to liability and not a rule of evidence, a protection from investigation, or a bar to discovery. Doc. 164 at 8-9 (stating "the doctrine is not a bar to discovery" and it "is not a rule of evidence, nor does it forbid the introduction of evidence") (quoting *Barnes Found. v. Twp. of Lower Merion*, 1996 WL 862451, at *4 (E.D. Pa. Dec. 23, 1996)); *see also In re Brand Name Prescription Drugs*, 186 F.3d 781, 789 (7th Cir. 1999); *MLB v. Crist*, 331 F.3d 1177, 1186 (11th Cir. 2003); *Assoc. Container*, 705 F.2d at 59-60; *Wolfe v. McNeil-PPC, Inc.*, 2012 WL 38694, at *6 (E.D. Pa. Jan. 9, 2012); *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1161 (D. Kan. 2010); *Houston Indus. v. Kaufman*, 1996 WL 580418, at *3 (S.D. Tex. Mar. 7, 1996); *P&B Marina L.P. v. Logrande*, 136

F.R.D. 50, 61 (E.D.N.Y. 1991) (Weinstein, J.).  Highmark itself admitted this: "[I]t is true that *Noerr-Pennington* does not necessarily preclude the discovery of evidence to try to prove something **other than** whether a litigation is a 'sham'. . . ."  Doc. 192 at 2.  Unsurprisingly, Highmark's cases apply the *Noerr-Pennington* doctrine in the context of an attempt to impose liability—even Highmark's primary case, *Prof'l Real Estate Inv., Inc. v. Columbia Pics. Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*").  These cases, including *PRE*, simply do not apply to bar discovery where UPMC does not seek to impose liability for the claimed petitioning.

As the Court knows, Class RFP No. 9 was served in the *Royal Mile* case (2:10-cv-1609), and UPMC has not asserted any affirmative claims in that case.  *See* July 8, 2013 Hr'g Tr. at 11:3-6 ("[I]t's not a typical *Noerr-Pennington* situation where you have a party that's been sued for antitrust activity and the activity that they're sued about is something that would qualify under *Noerr-Pennington*.  That hasn't happened here.").  ***This fact—alone—is dispositive.***  The Court can overrule Highmark's Objections without regard to its *Noerr-Pennington* arguments.[1]

## B.  *Noerr-Pennington* Does Not Apply To Private Conduct.

Highmark's *Noerr-Pennington* arguments are also—separately and independently— inapposite because the scope of protection depends "on the source, context, and nature" of the conduct at issue, and the doctrine does not apply to conduct or agreements between private parties.  *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).  The

---

[1] In prior briefing, UPMC sought the settlement documents to prove Highmark's anticompetitive conduct in connection with UPMC's claims in the consolidated 2:12-cv-692 matter (as well as to address adequacy of Plaintiffs and counsel, credibility of witnesses, and UPMC's defenses in *Royal Mile*).  Since then, the Pennsylvania Insurance Department approved the Highmark-WPAHS affiliation, and conditions precedent to Highmark's obligations to dismiss the *WPAHS* case have occurred (pursuant to a mediated agreement between UPMC and Highmark).  UPMC has moved to enforce the mediated agreement, 2:12-cv-692, Doc. 187, and, assuming the motion is granted, the 2:12-cv-692 matter will be dismissed.  Accordingly, UPMC does not argue here that the documents should be produced on the basis of UPMC's claims in the 2:12-cv-692 matter, but UPMC reserves its right to do so if the matter is not dismissed.

Supreme Court made this clear in *Noerr*, stating that the doctrine applies "where a restraint upon trade or monopolization is the result of valid governmental action, ***as opposed to private action***." *Eastern Railroad Conference v. Noerr Motor Freight*, 365 U.S. 127, 136 (1961) (emphasis added); *see Allied Tube*, 486 U.S. at 506 (doctrine inapplicable when activity "did not take place in the open political arena . . . but within the confines of a private standard-setting process"); *Cardtoons v. MLB Players Ass'n*, 208 F.3d 885, 892 (10th Cir. 2000) (letter between parties "simply does not implicate the right to petition . . . ."). Indeed, the Third Circuit has explained that, with respect to "entirely private conduct which has not been approved or supervised explicitly by any state . . . [e]xtending *Noerr* immunity to this type of private activity would run counter to" the dictates of the Supreme Court. *Mass. Sch. of Law, Inc. v. ABA*, 107 F.3d 1026, 1039 (3d Cir. 1997). Thus, "the doctrine does not authorize anticompetitive action in advance of" government action. *In re Brand Name Prescription Drugs*, 186 F.3d at 789. Without "intervening government action [that] breaks the causal chain," private settlement conduct remains subject to antitrust liability, and the *Noerr-Pennington* doctrine does not apply. *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 818 (D.C. Cir. 2001).

In *Andrx*, for example, the court refused to apply the doctrine because the agreement at issue, made without court involvement, was "not unlike a final, private settlement agreement . . . [that] would not enjoy *Noerr-Pennington* immunity . . . ." *Andrx*, 256 F.3d at 819. Likewise, in *Webb v. County of Trinity*, 2010 WL 4628097, at *17 (E.D. Cal. Nov. 4, 2010), the court rejected the argument that *Noerr-Pennington* applied to private settlement negotiations, as "[the] doctrine simply does not provide any protection to defendants [. . . as defendants likely cannot] argue that in making a settlement offer to plaintiff that they were petitioning the government."

In *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y.

2003), the court considered whether the defendants' conduct, undertaken pursuant to settlement agreements between the parties, could give rise to antitrust liability.  It rejected the defendants' argument that *Noerr-Pennington* applied because the settlement agreements were the subject of a consent judgment entered by the presiding court and their terms were reviewed by the patent court.  The court explained that, "[e]ven if signing the Consent Judgment could be construed as approving the Settlement Agreements, government action that 'amounts to little more than approval of a private proposal' is not protected."  *Id*. at 213.  The fact that the patent court subsequently reviewed the terms did not trigger *Noerr-Pennington* protection either, as "'actual state involvement, not deference to private price fixing arrangements under the general auspices of state law, is the precondition for immunity from federal law.'"  *Id*.  *PRE* is not to the contrary; there, completed copyright litigation formed the basis for the alleged antitrust violations, not private conduct.  *PRE*, 508 U.S. at 52.

Plaintiffs' and Highmark's settlement and related negotiations did not involve the government and occurred before the settlement was submitted to the Court for approval.  The Court never did approve or otherwise adjudicate the merits of the settlement.  For this independent reason, *Noerr-Pennington* does not bar discovery.

### C.    *Noerr-Pennington* Does Not Protect Sham Petitioning Or Misrepresentations.

Highmark's *Noerr-Pennington* argument also fails for a third, standalone reason.  Even if the settlement and negotiations were "petitioning," whether they were a sham is disputed.[2]

*Noerr* established that sham petitioning is not subject to immunity, *see* 365 U.S. at 144, which

---

[2] UPMC has consistently argued that the settlement was a sham intended to leave UPMC solely responsible in *Royal Mile* for Highmark's antitrust violations and to impose delay and expense.  *See* Doc. 184 at 1, 4, 13; Doc. 211 at 1-2, 10-11.  UPMC has also argued that the litigation is a sham, including in its motion to dismiss, but the sham settlement alone entitles UPMC to the documents.

Highmark does not deny.  *See* Docs. 175, 192.  Petitioning is a "sham" if it is objectively and subjectively baseless.  *PRE*, 508 U.S. at 60.  It is objectively baseless if "no reasonable litigant could realistically expect success on the merits," and it is subjectively baseless if it "conceals 'an attempt to interfere *directly* with the business relationships of a competitor' through the 'use [of] the governmental *process* . . . .'"  *Id.* at 60-61.  Assuming Highmark's settlement and negotiations somehow constitute petitioning, they were a "sham" because no reasonable person could have thought the settlement had value, and the negotiations, claimed to involve material misrepresentations, concealed an attempt to use the settlement to injure UPMC.  *See, e.g.*, Doc. 142 at 1, 3-4 (describing "Highmark's misrepresentations in the negotiation of the Agreement").

Indeed, the Supreme Court has long held that—in litigation—misrepresentations are a "reprehensible practice which may corrupt the . . . judicial processes and which may result in antitrust violations."  *Calif. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 513 (1972).  More recently, the Supreme Court reiterated that "unethical and deceptive practices can constitute abuses of . . . judicial processes," *Allied Tube*, 486 U.S. at 499, and courts have held that misrepresentations in litigation negate *Noerr*-*Pennington* immunity.  *E.g.*, *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995); *Caldon, Inc. v. Advanced Measurement Grp.*, 515 F. Supp. 2d 565, 574 (W.D. Pa. 2007); *U.S. Futures Exch. LLC v. Bd. of Trade*, 2005 U.S. Dist. LEXIS 17779, at *5 (N.D. Ill. Aug. 22, 2005).  The Third Circuit similarly has determined that a material misrepresentation affecting the core of a litigant's petition makes it objectively baseless.  *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 124 (3d Cir. 1999).  Here, both Plaintiffs and UPMC claim that Highmark's misrepresentations affected the core of the settlement, *i.e.*, its value to the class, rendering it objectively baseless.  *See* Exhibits A & B.

Discovery is warranted to address these issues because determining whether material

misrepresentations were made or petitioning is otherwise objectively and subjectively baseless requires resolving fact questions.[3]   For example, in *American Home Products Corp. v. Johnson & Johnson Corp.*, 1994 WL 46522 (E.D. Pa. Feb. 15, 1994), the court considered whether the *Noerr-Pennington* doctrine should have excluded evidence of the defendant's prior patent infringement claims in the plaintiff's unfair competition suit.   The court held that allowing the evidence was not error because "[t]here was no way [the judge] could determine [objective baselessness] as a matter of law . . . . [T]he question of [objective baselessness was] a mixed one of fact and law" and "[t]o make a determination [on that issue] . . . among other things, a fact finder must consider what information [plaintiffs] relied [on], before filing the suit."   *Id.* at *1.

Likewise, in *Hoffman-LaRoche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999), the court denied a motion to dismiss on the basis of *Noerr-Pennington* immunity because it could not determine whether the sham exception applied in light of myriad questions of fact related to objective baselessness.   And in *Catch Curve, Inc. v. Venali, Inc.*, the court held that *Noerr-Pennington* immunity could be raised again on summary judgment, but that at the motion to dismiss stage—prior to discovery—there could be no immunity because "'[w]hether something is a genuine effort to influence governmental action, or a mere sham, is a question of fact.'"   519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007) (citation omitted); *see also Bartley v. Taylor*, 2012 WL 2395479, at *3-4 (M.D. Pa. June 22, 2012); *Echostar Satellite, L.L.C. v. ViewTech, Inc.*, 2009 WL 1668712, at *3 (S.D. Cal. May 27, 2009); *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 360-62 n.5 (D. Mass. 2004).   Thus, as Special Master Levie correctly stated, "[w]hen the predicate facts of an allegedly sham lawsuit are disputed," as they often are, "sham

---

[3] Highmark admits that "where the facts are in dispute regarding whether a litigation is objectively baseless, the Court cannot decide the question of objective baselessness as a matter of law."   Doc. 192 at 3 ("That is also true. . . .").

litigation claims should not be decided by the court as a matter of law."  Doc. 164 at 8 (quoting *In re Neurontin Antitrust Litig.*, 2009 WL 2751029, at *22 (D.N.J. Aug. 28, 2009)); *accord In re Wellbutrin SR Antitrust Litig.*, 2010 WL 8425190, at *14 (E.D. Pa. Mar. 31, 2010).

Accordingly, courts regularly allow discovery into facts relevant to the sham exception to *Noerr-Pennington*.  In *New York Jets LLC v. Cablevision Sys.*, 2005 WL 3454652, at *2-3 (S.D. N.Y. Dec. 19, 2005), for example, the court stated that, where facts are disputed, there is "no requirement that a court determine whether the 'sham' exception applies without the benefit of full discovery."  *See also ICOS v. Scanner Techs.*, 2006 WL 838990, at *5 (S.D.N.Y. Mar. 29, 2006); *La. Wholesale Drug Co. v. Sanofi-Aventis*, 2008 WL 169362, at *5 (S.D.N.Y. Jan. 18, 2008).

Highmark argues that no factual disputes need to be resolved, Doc. 175 at 10-11, but the objective merits of the settlement and whether Highmark made misrepresentations about it are disputed, as are Highmark's subjective motivations in pursuing it.  *See* Exhibits A & B.  The Court has questioned the settlement's value, stating there was "no direct benefit to the class members, at least as the Court could see . . . ."  Nov. 26, 2012 Hr'g Tr. at 3:17-18.  UPMC has demonstrated "[t]here is no value," Doc. 130 at 1-9, and Plaintiffs have agreed, stating that "the value attributed to the proposed settlement was illusory . . . ."  Doc. 142 at 1, 3 ("*zero* benefit"); Doc. 151.  Highmark, in contrast, has repeatedly called it a "valuable settlement," defending its claimed "significant economic value."  Doc. 147 at 3-4, 10-15; Doc. 178 at 2.

For this additional reason, Highmark's repeated invocation of *PRE* is misplaced because there, unlike here, the parties agreed that the petitioning at issue was not objectively baseless, 508 U.S. at 54, and "[s]ince there was no dispute over the predicate facts of the underlying legal proceedings . . .[,] the court could decide probable cause as a matter of law."  *Id*. at 50.  Special Master Levie correctly noted that "the [*PRE*] district court had actually granted summary

judgment and determined that the plaintiff's claims were not 'objectively unreasonable' before denying the defendant's request for additional discovery, thereby expressly determining that the litigation was not a sham"—based on a full post-discovery record of the relevant facts and law. Doc. 164 at 8.  As confirmed by the numerous cases above decided ***after*** *PRE* that allow discovery into the sham exception, *PRE* has no application here because there are numerous, unresolved factual disputes regarding whether Highmark's settlement conduct was a "sham."

## II.    THE SETTLEMENT DOCUMENTS ARE RELEVANT AND DISCOVERABLE.

With *Noerr-Pennington* inapplicable, the documents must be produced if relevant.  *See* FED. R. CIV. P.  26(b).  It is well-established that, upon a "show[ing] that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence," they should be produced.  *Fidelity Fed. Sav. & Loan v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993); *see* Doc. 184 at 1-2.[4]  UPMC has presented three independent reasons why the settlement documents are relevant to key case issues.  *See* Doc. 184 at 3-9; Doc. 211 at 5-11.

### A.    The Settlement Documents Are Relevant To Adequacy.

Initially, the settlement documents are relevant to the adequacy of the class representatives and their counsel.  Although Special Master Levie deferred ruling on this issue because the future of the settlement was uncertain, *see* Doc. 164 at 6, now that it has been withdrawn, the Court should adopt Special Master Levie's view that the "information sought arguably will be relevant to UPMC's allegations of inadequacy."  *Id.* at 5.  Plaintiffs cannot certify a class in this case unless they prove, *inter alia*, that they and their counsel adequately represent the class.  An express requirement of Rule 23(a) is that "the representative parties will fairly and adequately

---

[4] Indisputably, "[s]ettlement negotiations are also not barred from discovery, as there is nothing in Federal Rule of Evidence 408 preventing their production during the broad discovery stage of trial." *Cont'l Cas. Co. v. Peerless Indus., Inc.*, 2008 WL 4058698, at *3 (E.D. Pa. Aug. 29, 2008); Doc. 184 at 2; Doc. 211 at 4-5.

protect the interests of the class," FED. R. CIV. P. 23(a)(4), which requires consideration of both

class representatives and their counsel.  *See In re Community Bank of N. Va.*, 622 F.3d 275, 291-

92, 303-08 (3d Cir. 2010).  Rule 23(g) also states that "[c]lass counsel must fairly and adequately

represent the interests of the class," and provides relevant criteria, including "the work counsel

has done in identifying or investigating potential claims in the action;" "counsel's knowledge of

the applicable law;" and any other matter "pertinent to counsel's ability to fairly and adequately

represent the interests of the class . . . ."  FED. R. CIV. P. 23(g)(1)(B), (4).

In considering these issues, courts frequently examine counsel's conduct in the pending

litigation.  In *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 231 (S.D. Ind. 2006), for

example, while addressing the adequacy of class counsel, the court explained that, "[b]ecause,

practically speaking, it is class counsel who prosecutes the case, it is entirely appropriate, if not

mandatory, for a court to assess the adequacy of counsel's representation and in doing so is

entitled to draw on observations of counsel's performance in the very litigation at issue."  The

court made the same point in *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D. Mich. 1994),

stating:  "[I]t is not reputation built upon past practice, but rather competence displayed by

present performance, which demonstrates the adequacy of counsel in a class action."  Other

courts, including the Third Circuit, are in accord.  *See, e.g.*, *In re Cmty. Bank. of N. Va.*, 622 F.3d

at 305-08; *Walter v. Palisades Collection, LLC*, 2010 WL 308978, at *9 (E.D. Pa. Jan. 26, 2010);

*Kingsepp v. Wesleyan Univ.*, 1992 U.S. Dist. LEXIS 13399, at *7-8 (S.D.N.Y. Sept. 3, 1992).[5]

Class counsel's conduct in connection with settlements also can be particularly revealing.  In

---

[5] These cases, where courts consider class counsel's litigation performance in assessing
adequacy, further confirm that the *Noerr-Pennington* doctrine does not broadly prevent evidence
related to activity in the pending litigation from being used for purposes other than imposing
liability.  *See* Section I, *supra*.  If it did, then these courts could not rely on the cited evidence.

*Reynolds v. Beneficial National Bank*, 260 F. Supp. 2d 680, 694-95 (N.D. Ill. 2003), the court

disqualified class counsel, citing counsel's collusive, pre-suit settlement discussions with

defendants, the fact that the settlement was for less than defendants paid to settle similar cases,

and counsel's failure to conduct sufficient discovery and analysis of the issues. *Id.*; *see also Byes*

*v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421, 428-29 (E.D. La. 1997).

Of course, examining potentially unethical behavior is also critical. According to Wright

& Miller, "any conduct that suggests that class counsel may have been engaging in unethical

behavior is relevant to determining the adequacy of the representation." 7A Wright & Miller,

Fed. Prac. & Proc. Civ. § 1769.1 (3d ed. 2013). In *Creative Montessori Learning Ctr. v. Ashford*

*Gear, LLC*, 662 F.3d 913, 918 (7th Cir. 2011), the court stated that "[w]hen class counsel have

demonstrated a lack of integrity, a court can have no confidence that they will act as

conscientious fiduciaries of the class." The court remanded the case to the district court for an

examination of counsel's conduct, noting that "[m]isconduct by class counsel that creates a

serious doubt that counsel will represent the class loyally requires denial of class certification."

*Id.* Numerous other courts have similarly examined the ethics of class counsel's conduct in

assessing class certification. *See, e.g.*, *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270

F.R.D. 150, 160 (S.D.N.Y. 2010); *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F. Supp. 643,

661-62 (N.D. Ill. 1986); *In re Mid-Atlantic Toyota Antitrust Litig.*, 93 F.R.D. 485, 491 (D. Md.

1982); *Taub v. Glickman*, 1970 WL 210, at *1-3 (S.D.N.Y. Dec. 1, 1970).

Given the importance of, and the breadth of issues relevant to, the adequacy

determination, courts regularly permit defendants to pursue discovery relating to adequacy of

class plaintiffs and their counsel. *See, e.g.*, *Barton v. RCI, LLC*, 2013 WL 1338235, at *24-25

(D.N.J. Apr. 1, 2013); *Montano v. Chao*, 2008 WL 5377745, at *4 (D. Colo. Dec. 19, 2008); *In*

*re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at *5-8 (S.D.N.Y. July 30, 2008); *East Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *1, 3-5 (E.D. Mo. May 10, 2007).  This Court has held, for example, that defendants are entitled to discovery on whether counsel is "ethically as well as intellectually competent to represent" the class.  *See Stavrides v. Mellon Nat'l Bank & Trust Co.*, 60 F.R.D. 634, 636-37 (W.D. Pa. 1973).

Here, the settlement documents will reveal myriad critical facts relevant to whether class counsel and the representatives are adequate, including but not limited to whether they knew or suspected the settlement had no value; what Highmark told them about its value; whether Highmark misrepresented facts (as Plaintiffs' claim), *see* Doc. 142 at 1; what efforts they made to investigate Highmark's representations; what they did to evaluate the underlying facts and legal theories of the case; why they did not conduct more discovery prior to settling; whether they were more concerned about obtaining counsel's fees than value for the class (as Highmark contends), Doc. 147 at 3-4; whether Plaintiffs are being controlled by counsel looking out only for their own "selfish" interests (as Highmark claims), *id*. at 3; and a host of similar issues.[6]

Indeed, Highmark itself argued that class counsel should be disqualified for their settlement conduct, including for seeking to withdraw the settlement, thus acknowledging that the settlement is relevant to whether class counsel are adequate.[7]  *See, e.g.*, Doc. 147 at 4, 15 (Highmark requesting "the Court . . . disqualify . . . Del Sole, Cavanaugh & Stroyd, and lawyers Andrew Stone and Scott Hare from any representation of the putative class."); Doc. 152 at 7

---

[6] Plaintiffs' contention that UPMC lacks standing to litigate adequacy is baseless.  *See* July 8 Hr'g Tr. at 51:22–52:10.  Challenges by defendants to adequacy of class counsel and representatives are commonplace, and Plaintiffs' cases are distinguishable.  *See* Doc. 164 at 14-15.

[7] Ironically, Highmark apparently now argues that Plaintiffs' counsel cannot be considered inadequate because they withdrew the proposed settlement, the very reason for which Highmark sought their disqualification before.  *See* July 8, 2013 Hr'g Tr. at 45:4-23 and 58:2-14.

(same); Doc. 156 at 1-2 (describing "conflicted counsel").  Highmark also accused Plaintiffs and

their counsel of ethical violations during settlement:

- "[M]otivated purely by their own greed, plaintiffs' counsel have knowingly made false statements to this Court to try to scuttle the binding settlement, breaching their fiduciary obligations to the class that they want to represent . . . ."  Doc. 147 at 1; *id*. at 2.

- Plaintiffs' "counsel's claim that they were ignorant" of Highmark's intentions regarding Community Blue "establishes either that they are incompetent or that they are deliberately lying to the Court . . . for their own selfish purposes."  *Id*. at 3.

- Highmark then argued that there was "an irreconcilable conflict between the interests of the lawyers and the interests of the class that they seek to represent."  *Id*. at 4.

- Highmark likewise accused Plaintiffs of misconduct:  "[P]laintiffs are just making this allegation up," *id*. at 7, and "plaintiffs now admit that they lied."  Doc. 152 at 3.

Highmark cannot reverse course now and pretend that there is no question here as to whether

Plaintiffs and their counsel are adequate class representatives.[8]  *See also* Exhibit C.

**B.      The Settlement Documents Are Relevant To Bias And Credibility.**

The settlement documents are also relevant to the bias, credibility and prejudice of

Highmark's and Plaintiffs' witnesses, as Special Master Levie found.  *See* Doc. 164 at 11.  Each

party has directly impugned the other's credibility, with Plaintiffs alleging that Highmark made

"misrepresentations in the negotiation of the Agreement," *see, e.g.*, Doc. 142 at 1, 3, and

Highmark claiming that Plaintiffs' "statements are false and plaintiffs' counsel know that they

are."  Doc. 147 at 2-3; *see also* Exhibits B & C.  These issues must be examined.  "[T]he trier of

fact must be sufficiently informed of the underlying relationships, circumstances, and influences

operating on the witness to determine whether a modification of testimony reasonably could be

---

[8] Federal Rule of Evidence 408 is inapplicable because it does not prohibit using settlement documents to evaluate Plaintiffs' and counsel's adequacy.  Also, "'on a motion for class certification, . . . courts will consider evidence that may not be admissible at trial.'"  *Vinson v. Seven Seventeen HB Phila. No. 2*, 2001 U.S. Dist. LEXIS 25295, at *69 n.28 (E.D. Pa. Oct. 31, 2001); *see also Hayden v. Freightcar Am., Inc.*, 2008 WL 375762, at *2 (W.D. Pa. Jan. 11, 2008).

expected as a probable human reaction." *See* 4 Weinstein's Fed. Evid. § 607.04[1] (2d ed. 2012).

Special Master Levie was correct that the documents would "tend to reflect the credibility of those Highmark and Royal Mile executives who participated in the settlement negotiations." Doc. 164 at 12. At issue is the credibility of the Highmark employees submitting declarations supporting the settlement, like William Cashion and Marcia Conley, and any others who developed Highmark's illusory settlement proposals (individuals the settlement documents will reveal). William Cashion—Highmark's chief actuary and a person identified by all parties as highly likely to be deposed—is a good example. UPMC and Plaintiffs have identified misleading statements in Mr. Cashion's settlement declaration: "The Cashion Declaration is conspicuously misleading regarding the history of Community Blue." *See* Doc. 151 at 14 n.5. UPMC is entitled to the settlement documents to explore Mr. Cashion's credibility as to the topics in his declaration, as well as credibility of the other individuals involved in the settlement.

### C. The Settlement Documents Are Relevant To UPMC's Defenses In *Royal Mile*.

The settlement documents are also relevant to UPMC's defenses in *Royal Mile*. They will provide context for UPMC's position that Plaintiffs' alleged injuries, if any, are attributable to Highmark's unilateral anticompetitive conduct, not to any supposed conspiracy with UPMC. Such context is important in antitrust cases where "direct evidence, the proverbial 'smoking gun,' is difficult to come by," and parties must rely on the circumstantial evidence in "business documents and other records" that reside "largely in the hands of the alleged conspirators." *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29160, at *8-9 (E.D. Pa. Oct. 29, 2004). Even where the *Noerr-Pennington* doctrine applies, courts permit discovery regarding the protected petitioning activity if it will shed light on the purpose and character of actions or petitioner's broader anticompetitive scheme. The Supreme Court addressed this issue in *Pennington* itself, noting the importance of contextual evidence in antitrust and other cases:

> It would of course still be within the province of the trial judge to admit this evidence [of immunized conduct] . . . under the "established judicial rule of evidence that ***testimony of prior or subsequent transactions***, which for some reason are barred from forming the basis for a suit, ***may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny***."

381 U.S. at 670 n.3 (emphasis added); *see also In re Neurontin*, 2009 WL 2751029, at *17 n.42

("evidence of any immune, yet allegedly anticompetitive, conduct may still be relevant") (citing

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 645 (E.D. Mich. 2000) (quoting *In re*

*Brand Name*, 186 F.3d at 789)); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 527 F. Supp. 2d

1084, 1097 (N.D. Cal. 2007); *Wolfe*, 2012 WL 38694, at *6; *P&B Marina,* 136 F.R.D. at 61.[9]

The sham settlement illustrates UPMC's argument that Highmark has attempted to

destroy UPMC in various ways over the years.  The settlement documents will help show that

there is not, and never has been, a conspiracy between Highmark and UPMC, and that Highmark

instead has repeatedly acted against UPMC's interests to advance its anticompetitive agenda.

They will refute Plaintiffs' ***specific*** allegation that UPMC and Highmark are working together ***to***

***this day*** to harm the class.  Doc. 90 ¶ 1 (alleging that "unlawful and anticompetitive conduct

continued after 2008 ***and continues to this day***") (emphasis added).  This allegation alone

confirms that evidence of Highmark's recent conduct, including its settlement negotiations with

Plaintiffs, are directly relevant to Plaintiffs' claims and should not be excluded from discovery.

## CONCLUSION

For all these reasons, UPMC respectfully requests that the Court overrule the Objections

and order Highmark's and Plaintiffs' settlement documents promptly produced.

---

[9] Federal Rule of Evidence 408 does not apply here because UPMC is not attempting to use the settlement communications for any prohibited purposes, and in any event, the Rule "is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations."  FED. R. EVID. 408, Adv. Committee Note (citing *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir. 1997)).

Dated:  July 22, 2013

Respectfully submitted,

/s/ *Rebekah B. Kcehowski*
Paul M. Pohl (Pa. No. 21625)
Leon F. DeJulius, Jr. (Pa. No. 90383)
Rebekah B. Kcehowski (Pa. No. 90219)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
pmpohl@jonesday.com
lfdejulius@jonesday.com
rbkcehowski@jonesday.com

Joe Sims (*Pro Hac Vice* granted)
Kathy Fenton (*Pro Hac Vice* granted)
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
jsims@jonesday.com
kmfenton@jonesday.com

Paul H. Titus (Pa. No. 01399)
Keith E. Whitson (Pa. No. 69656)
SCHNADER HARRISON SEGAL &
LEWIS LLP
Fifth Avenue Place, Suite 2700
Pittsburgh, PA  15222-3001
Tel: (412) 577-5200
Fax: (412) 765-3858
ptitus@schnader.com
kwhitson@schnader.com

*Attorneys for Defendant UPMC*