IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROYAL MILE COMPANY, INC.**, **PAMELA LANG** and **COLE'S WEXFORD HOTEL, INC.**, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **UPMC** and **HIGHMARK, INC.**, <br><br> Defendants. | Case No. 2:10-cv-01609-JFC <br><br> Judge Joy Flowers Conti <br><br> *Related to Case 2:09-cv-480-JFC* |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING STANDING OF DEFENDANTS TO CHALLENGE THE ADEQUACY OF PLAINTIFFS AND PLAINTIFFS' COUNSEL**

During the hearing on Objections to Special Master R&R No. 1 held on July 8, 2013, the Court requested further briefing from Plaintiffs regarding the standing of Defendant UPMC to challenge the adequacy of the named Plaintiffs and their counsel. This question lingers because UPMC has pointed to its own continuing attack on the class representatives as a basis to obtain discovery from Plaintiffs and Defendant Highmark relating to their former proposed settlement agreement.[1]

Plaintiffs previously cited a trio of cases, *Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981), *Dutton v. Harris Stratex Networks, Inc.*, CIVA

---

[1] As the Court itself observed at the first hearing on the Motion for Preliminary Approval of Proposed Settlement on November 26, 2012, UPMC never filed any objection to the motion for preliminary approval and therefore waived any challenge to the settlement (even assuming it had standing to challenge the settlement in the first instance). UPMC's waiver of any timely objection to the proposed settlement has not discouraged it, however, from pointing to the proposed settlement as a basis to mount a broader challenge to the adequacy of the Plaintiff representatives and class counsel.

08-755-JJF, 2009 WL 1598408 (D. Del., June 5, 2009), and *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 575 (D.N.J. 2001), to demonstrate that UPMC lacks standing to object to the adequacy of lead plaintiffs and their chosen counsel. UPMC responded by arguing that Plaintiffs' cases, and the limitation on defendant standing described therein, are confined to lawsuits under the Private Securities Litigation Reform Act, and that no such restriction applies in this antitrust case. UPMC's argument ignores both the rich body of cases outside the PSLRA - including *Eggleston* itself - and the reasoning giving rise to those decisions.

In language perfectly descriptive of UPMC's campaign in this case, the Seventh Circuit in *Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981) memorably observed:

> it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

Id., 657 F.2d at 895. The *Eggleston* Court lamented a history of discovery abuses in the case, finding that many of defendants' "discovery excesses" demonstrated that "they were more interested in tactics than answers," resulting in "'runaway' discovery which is excessive, burdensome, unnecessary and intrusive … designed for some other purpose than to assist the court in making a class determination." The same description easily applies to UPMC's current discovery requests.

The *Eggleston* Court's skeptical view of a defendant's standing to challenge the adequacy of class counsel has been adopted by numerous courts, including courts within the Third Circuit and including courts in antitrust cases. For instance, the District Court for the Eastern District of

Pennsylvania recognized the defendant's strategic use of just such a challenge in Umbriac v. American Snacks, Inc., 388 F. Supp. 265, 275 (E.D. Pa. 1975), observing:

> It is in the nature of the motion practice on class determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the "best" representation for the class while the implicit, but nonetheless real, objective of their vigorous legal assaults is to insure "no" representation for the class.

Id., 388 F. Supp. At 275. See also Grider v. Keystone Health Plan Cent., Inc., 2006 U.S. Dist. LEXIS 93085, 73-74 (E.D. Pa. Dec. 21, 2006), *modified on other grounds* (*quoting Eggleston* "fox and chicken house" admonition); Marian Bank v. Electronic Payment Servs., Inc., 1997 U.S. Dist. LEXIS 21021 (D. Del. Dec. 30, 1997) (antitrust case under Sherman Act §§ 1 and 2) (same); Farms v. Calcot, Ltd., 2010 U.S. Dist. LEXIS 93548, 17-18 (E.D. Cal. Aug. 23, 2010) (same; rejecting challenge to adequacy of class counsel); Farber v. Public Service Co., 1990 U.S. Dist. LEXIS 18376, 8-9 (D.N.M. Dec. 3, 1990) (same).

As the foregoing cases illustrate, UPMC's predictable tactics are a common theme for defense counsel. Expressing concern over such tactics in language that accurately foreshadows UPMC's line of attack in this case, Professor Newberg observed:

> Defendants frequently challenge the adequacy of representation by the class representative or the plaintiff's counsel. Class counsel may be charged with unethical conduct associated with the solicitation, involvement in conflicting litigation, or professional incompetence... Expensive and time-consuming discovery, or leave to engage in such, is often requested by the defendants to support these charges. If permitted, such wide-ranging discovery may produce enough opt-outs to undermine the action. . . . An attack on the ethical and professional conduct of the plaintiff's counsel and even the named plaintiff may actually backfire if the court rejects such charges and in fact emphasizes the counsel's expertise, tenacity, and loyalty to the class. . . Most courts recognize that far-flung discovery on the adequacy of representation of the plaintiff and class counsel is usually unsuccessful because of the highly questionable relevance of the discovery details sought. Furthermore, such discovery has mischievous effects of large capability of harassment and oppression of the class representatives, as well as serious dilatory effects of deferring court consideration

of the merits of the controversy.  As one court noted, weakly supported attacks by the defendants on the credibility and qualifications of the named plaintiff as well as the ethical conduct of the plaintiff's counsel, under the semblance of concern for the adequate representation of absent class members, "distract parties from the real issues at hand and create an atmosphere of ill-will not conducive to the proper conduct of a complex action such as this where cooperation among counsel is especially necessary. . . [*citing* Peil v. Speiser, 97 F.R.D. 657, 661 (E.D. Pa. 1983)]"

Herbert Newberg, **Newberg on Class Actions**, at Section 15:30 ("**Discovery abuses in challenges to adequacy**"), pp. 101-108 (footnotes omitted), *citing, inter alia*, *Eggleston*, *supra*; Fradkin v. Ernst, 98 F.R.D. 478, 484 (N.D. Ohio 1983) ("In reviewing defendants' arguments, this Court 'must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation.'"); Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas), Ltd., 94 F.R.D. 147, 154 (N.D. Ill. 1982); Sley v. Jamaica Water & Utilities, Inc., 77 F.R.D. 391, 394 (E.D. Pa. 1977) (denying motion to decertify class and disqualify class counsel; "As Judge Higginbotham noted in *Umbriac*, defendants who take such a position on class certification or decertification motions are realistically not concerned with the 'best' representation for the plaintiff class but rather their goal is to ensure 'no' representation.); *Umbriac*, *supra*.

UPMC cites three cases - all outside the Third Circuit - to demonstrate that it is permitted to take discovery to mount a challenge to the adequacy of Plaintiffs' counsel:[2] Montano v. Chao, 2008 WL 5377745, at *3 (D. Colo. Dec. 19, 2008); In re Marsh & McLennan Cos., Inc. Sec. Litig., 2008 WL 2941215, at *5-8 (S.D.N.Y. July 30, 2008); In re FedEx Ground Package Sys., Inc. Employment Practices Litig., 2007 WL 733753, at *2, 4-5, 11 (N.D. Ind. Mar. 5, 2007).  On

---

[2]  UPMC's remaining case citations concern the unremarkable proposition that Rule 23 requires a showing of adequacy as the class certification stage.  Plaintiffs do not dispute this generic observation.

review, these cases fail to provide the broad mandate for unfettered discovery that UPMC suggests.

In Montano, defendants sought to compel the production of discovery regarding, *inter alia*, payments to plaintiffs' counsel by a non-party putative beneficiary of the litigation, and communications between plaintiffs' counsel and both class members and the non-party beneficiary. After observing that the court has the power to "forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense," *citing* Fed. R. Civ. P. 26(c)(1), the court allowed discovery relating to the payment of legal fees to class counsel by the non-party, finding that information to be relevant to Rule 23(g) adequacy consideration. (No such non-party payment of fees is at issue in this case.) In contrast, the court limited discovery on other topics, including communications by counsel, concluding "Given the negligible and peripheral relevance of the information sought by the defendants in Interrogatory No. 2, if indeed there is any relevance at all, the court finds that pursuant to Fed. R. Civ. P. 26, it would be an undue burden on the plaintiffs to require the plaintiffs to respond to defendant's Interrogatory No. 2."

In Marsh & McLenahan, a securities case filed after the passage of the PSLRA, the court considered objections to a special master order compelling discovery. On *de novo* review of the special master's order, the court narrowed the scope of discovery to be produced. This decision provides little support to UPMC. First, there was no challenge regarding, nor did the court address, the adequacy of counsel. Second, although the court allowed some discovery regarding investigations made by the named class representative, the court concluded that "some cabining

of the requested discovery is justified, so as to prevent the ensuing inquiry from becoming a 'fishing expedition.'"

Finally, and likewise, in <u>Fedex Ground Package Systems, Inc. Employment Practices Litigation</u>, there was no challenge regarding, nor did the court address, the adequacy of counsel. (Indeed, the defendant expressly was "not arguing that the alleged conflict with the Teamsters will disqualify Plaintiffs' counsel for unethical conduct.") As in <u>Marsh & McLenahan</u>, the court expressed concern with "fishing expeditions" and substantially limited the discovery requested by defendant, finding it to be "far too broad and burdensome given the size of this litigation. Any benefit that Fedex would receive from this discovery would be far outweighed by the burden it would place upon Plaintiffs to not only produce the discovery, but to also find the relevant discovery."

### **Conclusion**

Plaintiffs continue to await the start of actual discovery production (beyond production of the DOJ materials in lieu of Rule 26 disclosures) by either Defendant in this case. Despite this substantive discovery standstill, UPMC is determined to consume the resources of the parties and the Court to obtain discovery regarding a potential settlement which was long since abandoned because the settlement relief was largely mandated by the Pennsylvania Insurance Department outside the confines of this litigation.

For the reasons described by both Professor Newberg and numerous courts, inside and outside the Third Circuit, UPMC's discovery requests are designed not to fulfill the wholesome objectives of Rule 23, but rather to continue its promised war of attrition on Plaintiffs through a continuing bad-faith attack on Plaintiffs and Plaintiffs' counsel. Any conceivable relevance of stale information regarding the negotiation of a now abandoned settlement is outweighed by the

pernicious and mischievous purpose behind UPMC's requests. Thus, even if UPMC nominally has standing to challenge the Plaintiff representatives, its challenge should be viewed with great skepticism. The requests should be denied.


Dated: July 22, 2013

                                                  Respectfully Submitted,

| | |
|---|---|
| /s/ Hamish Hume | /s/ Arthur H. Stroyd, Jr. |
| Hamish Hume *(pro hac vice)* | Arthur H. Stroyd, Jr. (Pa. No. 15910) |
| Kathleen Kiernan *(pro hac vice)* | Steven J. Del Sole (Pa. No. 73460) |
| BOIES, SCHILLER & FLEXNER LLP | Patrick K. Cavanaugh (Pa. No. 72960) |
| 5301 Wisconsin Avenue, N.W. | Benjamin J. Sweet (Pa. No. 87338) |
| Washington, D.C. 20015 | DEL SOLE CAVANAUGH STROYD LLC |
| Tel: 202-237-2727 | 200 1st Avenue, Suite 300 |
| Fax: 202-237-6131 | Pittsburgh, PA 15222 |
| hhume@bsfllp.com | Tel: 412-261-2393 |
| kkiernan@bsfllp.com | Fax: 412-261-2110 |
| | astroyd@dscslaw.com |
| /s/ David Stone | sdelsole@dscslaw.com |
| David Stone *(pro hac vice)* | pcavanaugh@dscslaw.com |
| David Harrison *(pro hac vice)* | bsweet@dscslaw.com |
| Jason Spiro *(pro hac vice)* | |
| STONE & MAGNANINI LLP | /s/ Andrew M. Stone |
| 150 JFK Parkway | Andrew M. Stone (Pa. No. 35176) |
| Short Hills, NJ 07078 | STONE LAW FIRM, LLC |
| Tel: 973-218-1111 | The Frick Building, Suite 1806 |
| Fax: 973-218-1106 | 437 Grant Street |
| dstone@stonemagnalaw.com | Pittsburgh, PA 15219 |
| dharrison@stonemagnalaw.com | Tel: 412-391-2005 |
| jspiro@stonemagnalaw.com | Fax: 412-391-0853 |
| | astone@stone-law-firm.com |
| | |
| | /s/ Scott M. Hare |
| | Scott M. Hare (Pa. No. 63818) |
| | The Frick Building, Suite 1806 |
| | 437 Grant Street |
| | Pittsburgh, PA 15219 |
| | Tel: 412-338-8632 |
| | Fax: 412-338-6611 |
| | scott@scottlawpgh.com |