**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROYAL MILE COMPANY, INC.,<br>PAMELA LANG and<br>COLE'S WEXFORD HOTEL, INC.,<br>on their own behalf and on behalf of all<br>others similarly situated,<br><br>                Plaintiffs,<br><br>       v.<br><br>UPMC and HIGHMARK INC.,<br><br>            Defendants. | Case No. 2:10-cv-01609-JFC<br><br>Judge Joy Flowers Conti<br><br>*Electronically Filed*<br><br>Related to Case Nos. 2:09-cv-00480-JFC<br>                             2:12-cv-00692-JFC |

**UPMC'S OPPOSITION TO PG PUBLISHING COMPANY D/B/A
PITTSBURGH POST-GAZETTE'S OBJECTIONS TO
<u>REPORT & RECOMMENDATION #3 OF THE SPECIAL MASTER</u>**

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................... 1

ARGUMENT ....................................................................................................... 3

I.  THE SPECIAL MASTER CORRECTLY HELD THAT UPMC
    DEMONSTRATED GOOD CAUSE FOR ITS TARGETED REDACTIONS ................ 3

    A.  Good Cause Does Not Impose A Presumption Of Access To Discovery ............ 4

    B.  The Special Master Correctly Applied The *Pansy* Good Cause Factors ............... 5

II. THE SPECIAL MASTER CORRECTLY HELD THAT THERE IS NO FIRST
    AMENDMENT RIGHT OF ACCESS TO THE DISCOVERY DOCUMENTS ........... 10

    A.  The Special Master Properly Applied The Experience And Logic Test ............. 10

    B.  The Post-Gazette Ignores The Governing Cases .................................................. 12

III. THE POST-GAZETTE HAD NO RIGHT TO PARTICIPATE IN THE *IN
    CAMERA* HEARING, AND NO FURTHER HEARING IS REQUIRED ..................... 15

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agrizap, Inc. v. Woodstream Corp.*,
   No. 04-3925, 2005 WL 1772675 (E.D. Pa. July 28, 2005) ......................................................6

*Anderson v. Cryovac, Inc.*,
   805 F.2d 1 (1st Cir. 1986) .......................................................................................... passim

*Arnold v. PennDOT*,
   477 F.3d 105 (3d Cir. 2007).......................................................................................................9

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*,
   263 F.3d 1304 (11th Cir. 2001) ...................................................................................4, 11, 12

*Commissariat a l'Energie Atomique v. Samsung Electrs. Co.*,
   245 F.R.D. 177 (D. Del. 2007) ................................................................................................20

*Crystal Grower's Corp. v. Dobbins*,
   616 F.2d 458 (10th Cir. 1980) ...........................................................................................16, 18

*EEOC v. GMT, LLC*,
   No. 8:11-cv-336, 2012 WL 2871789 (D. Neb. July 12, 2012) .................................................4

*El Vocero de Puerto Rico v. Puerto Rico*,
   508 U.S. 147 (1993)..................................................................................................................13

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1112 (9th Cir. 2003) ...........................................................................................16, 18

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982)............................................................................................................10, 13

*Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*,
   No. 11-cv-4649, 2012 WL 1521954 (E.D. Pa. Apr. 30, 2012)......................................6, 8, 10

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)........................................................................................................13

*Heller v. Shaw Indus., Inc.*,
   No. 95-7657, 1997 WL 786542 (E.D. Pa. Nov. 20, 1997) ........................................................6

*Honeywell Int'l, Inc. v. Nikon Corp.*,
   No. 04-1337-JJF, 2010 WL 744535 (D. Del. Mar. 2, 2010) .....................................................6

*In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*,
    913 F.2d 89 (3d Cir. 1990) ...................................................................................19

*In re Iowa Freedom of Info. Council*,
    724 F.2d 658 (8th Cir. 1983) ...........................................................................16, 18

*In re Providence Journal Co.*,
    293 F.3d 1 (1st Cir. 2002)...................................................................................13

*Kinetic Concepts, Inc. v. Convatec Inc.*,
    No. 1:08-cv-00918, 2010 WL 1418312 (M.D.N.C. Apr. 2, 2010) ...........................5

*LEAP Sys., Inc. v. Moneytrax, Inc.*,
    638 F.3d 216 (3d Cir. 2011)............................................................................6, 16

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    998 F.2d 157 (3d Cir. 1993).........................................................................passim

*Littlejohn v. BIC Corp.*,
    851 F.2d 673 (3d Cir. 1988).................................................................................5

*Miles v. The Boeing Co.*,
    154 F.R.D. 112 (E.D. Pa. 1994).............................................................................5

*Mokhiber v. Davis*,
    537 A.2d 1100 (D.C. 1988) ................................................................................14

*Net2phone, Inc. v. Ebay, Inc.*,
    No. 06-2469 (KSH), 2008 WL 8183817 (D.N.J. June 26, 2008) .........................20

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)........................................................................................5, 15

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)............................................................................4, 5, 9

*Pintos v. Pac. Creditors Ass'n*,
    565 F.3d 1106 (9th Cir. 2009) ..............................................................................4

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984)........................................................................passim

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991)................................................................................13

*Rosado v. Bridgeport Roman Catholic Diocesan Corp.*,
    970 A.2d 656 (Conn. 2009) ................................................................................14

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984)................................................................................4, 11, 12, 18

*United States v. Wecht,*
484 F.3d 194 (3d Cir. 2007)...................................................................4, 5, 10, 13

*WPAHS v. UPMC,*
No. 2:09-cv-480, 2012 WL 512681 (W.D. Pa. Feb. 14, 2012)..........................6, 7, 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26 ........................................................................1, 3, 5

Federal Rule of Civil Procedure 53 ........................................................................20

### TABLE OF EXHIBITS

Exhibit 1        April 19, 2013 Emails from the Parties to Christina Calce

Exhibit 2        June 13, 2013 Hearing Transcript

Exhibit 3        May 8, 2013 Email from UPMC to the Post-Gazette

Exhibit 4        Testimony of Deborah L. Rice Before the Pennsylvania Senate Majority Policy
                 Committee (Aug. 1, 2012)

Exhibit 5        May 31, 2013 Pennsylvania Insurance Department Findings of Fact and
                 Conclusions of Law

Exhibit 6        April 25, 2013 Blackstone Report

Exhibit 7        April 24, 2013 Compass-Lexecon Report

The Court should adopt Report & Recommendation #3 (DE 239) because Special Master Levie properly applied the good cause standard of Federal Rule of Civil Procedure 26(c) when he approved certain of UPMC's targeted redactions of confidential business information *from documents UPMC produced only in discovery*. *See* R&R #3 at 14–22. Indeed, as Special Master Levie held, UPMC "put forth credible and convincing evidence" that the information covered by those targeted redactions relates to business strategies "still in use today" and "[r]evealing these strategies would grant UPMC competitors insight into UPMC's competitive tactics and thereby injure UPMC's ability to compete in the current marketplace." *Id.* at 12.

The Post-Gazette's objections fail to provide any basis for rejecting Special Master Levie's recommendation. The Post-Gazette takes aim at Special Master Levie's application of the good cause standard, *see* Objs. at 16–22 (DE 243), but misapplies the governing factors and ignores the significant harm that disclosure of the confidential business information would inflict on UPMC. The Post-Gazette's attempt to contrive a First Amendment right to access discovery motions and materials, *see id.* at 6–12, ignores the controlling cases rejecting any such right, fails to cite any relevant authority, and disregards that UPMC has satisfied any First Amendment standard anyway. And the Post-Gazette's argument that due process required access to UPMC's confidential information *before* the Court could rule on the targeted redactions, *see id.* at 12–16, flies in the face of reason, common sense, and law. The Court should adopt R&R #3.

## BACKGROUND

In its objections to R&R #3, the Post-Gazette seeks public disclosure of UPMC's confidential business information that has not been, is not, and may never be filed with the Court. This sensitive information is contained in seven documents that UPMC produced to the parties in discovery subject to a "Highly Confidential—Outside Counsel/Experts Only" designation under

the governing stipulated protective orders.  The Royal Mile plaintiffs and West Penn Allegheny

Health System (collectively, "Plaintiffs") sought to attach those seven discovery documents as

exhibits to their then-planned objections ("Plaintiffs' objections") to Special Master Levie's

Report & Recommendation #2 (DE 165) ("R&R #2"), which recommended denial of Plaintiffs'

joint motion to compel UPMC to produce documents withheld on the basis of the attorney-client

privilege.  *See* Royal Mile Mot. (DE 166); WPAHS Mot. (No. 12-cv-692, DE 134).  Plaintiffs

moved for leave to file their objections and proposed exhibits to Special Master Levie's

resolution of that discovery motion under seal as required by the stipulated protective orders, and

the Court referred the motion to seal to the Special Master.  *See* April 18, 2013 Text Order.

All of the parties—including Plaintiffs and Highmark—confirmed that they have no

objections to UPMC's confidentiality designations with respect to the seven documents.  *See*

Ex. 1; Royal Mile Mot. (No. 10-cv-1609, DE 166) ¶ 12.  Shortly after Plaintiffs moved for leave

to file under seal, however, the Post-Gazette sought leave to intervene and unseal the record.  *See*

DE 171.  The Post-Gazette also sought leave to participate in any proceeding before the Special

Master to determine the confidentiality of UPMC's seven documents.  *See* DE 173.  UPMC

opposed the Post-Gazette's motions, and asked the Special Master to recommend certain targeted

redactions of UPMC's confidential business information from the seven documents.  *See* DE

179–182.  The Court held a status conference on June 10 and addressed the parties' positions on

these motions and the confidentiality designations.  *See* June 11, 2013 Text Order.

The Court then ordered additional briefing (*see id*.) and convened a hearing on June 13,

at which it heard argument on and considered the Post-Gazette's motion for leave to participate

in the *in camera* proceedings before the Special Master.  *See* Ex. 2 (June 13 Hr'g Tr.) at 24−36.

Consistent with the Court's rulings at that hearing, an *in camera* hearing was held on June 20,

during which the Court and Special Master received evidence and heard argument regarding UPMC's requested redactions. During this process, the Post-Gazette filed at least ten briefs regarding UPMC's redactions, presented argument at multiple hearings, and received redacted copies of the briefs and documents that UPMC submitted to the Special Master. *See, e.g.*, DE 171, 201, 210, 212; *see also* Ex. 3 (May 8 Email to the Post-Gazette). Then, three months after the *in camera* hearing, in a 22-page unredacted R&R, the Special Master recommended that many of UPMC's targeted redactions be granted and others be denied. *See* R&R #3 at 14–22.[1]

Today, however, it is at best unclear whether Plaintiffs will ever file their previously-planned objections to R&R #2 or the seven documents as exhibits. After R&R #3 issued, the Court dismissed the *Royal Mile* case, *see* Order (DE 241), and Highmark and West Penn have stated on the record that they "no longer have a desire to litigate" these cases, "and must simply resolve their dispute" with UPMC "about how the cases are to be dismissed." *See* Joint Mot. To Stay at 2 (DE 230). No party objected to R&R #3.

Thus, although it appears that the discovery dispute addressed in R&R #2 and Plaintiffs' previously-planned objections thereto have largely become moot, and there may never be judicial records for the Post-Gazette to seek, the Post-Gazette nonetheless insists on fighting on, and has objected to R&R #3. But, as explained below, each of the Post-Gazette's objections fails.

## ARGUMENT

### I. THE SPECIAL MASTER CORRECTLY HELD THAT UPMC DEMONSTRATED GOOD CAUSE FOR ITS TARGETED REDACTIONS.

The Post-Gazette concedes that, if the redaction of discovery materials "does not implicate First Amendment rights," the "good cause" standard of Rule 26(c) governs the

---

[1] The Special Master's ruling contemplates that the redactions will extend to both the documents and Plaintiffs' yet-to-be-filed objections to R&R #2, *see* R&R #3 at 14-22, so the Post-Gazette's "assum[ption]" that Plaintiffs' objections "must be filed unsealed with this Court," Objs. at 5, is faulty.

redaction of UPMC's confidential business information.  Objs. at 17.  The Post-Gazette further acknowledges that the good cause standard is applied by reference to the factors outlined in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994).  *See* Objs. at 7, 18–20.  Thus, because no First Amendment right is implicated here, *see infra* Part II, and the Special Master correctly applied the *Pansy* factors, the Court should adopt R&R #3.

### A.   Good Cause Does Not Impose A Presumption Of Access To Discovery.

The Third Circuit has held that, while "there is a presumptive [common law] right to public access to all material filed in connection with nondiscovery pretrial motions," there is "no such right as to discovery motions and their supporting documents."  *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993).  This holding makes perfect sense: Discovery is "not [a] public component[] of a civil trial," and even a litigant has no presumptive "right of access" to discovery materials or other "information made available only for purposes of trying his suit."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–33 (1984).  Thus, extending the presumption of public access to discovery motions and supporting materials "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands."  *Leucadia*, 998 F.2d at 164.

The Third Circuit therefore has held that discovery motions and materials should be protected from public disclosure whenever there is "good cause" to do so—without a presumption of access.  *Id.* at 165; *see also United States v. Wecht*, 484 F.3d 194, 212 & n.22 (3d Cir. 2007).  The three other federal circuits to have considered the question have reached the same result.  *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001); *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1115 (9th Cir. 2009); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 10 (1st Cir. 1986).  So, too, have district courts.  *E.g.*, *EEOC v. GMT*,

*LLC*, No. 8:11-cv-336, 2012 WL 2871789, at *3 (D. Neb. July 12, 2012); *Kinetic Concepts, Inc.*

*v. Convatec Inc.*, No. 1:08-cv-00918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010).

   The Post-Gazette is therefore incorrect when it suggests that Rule 26(c) creates a

"presumption" in favor of access to discovery motions and materials.  Objs. at 6, 10, 18.  And the

Post-Gazette misrepresents UPMC's position, *see id.* at 6, because UPMC has *never* agreed that

such a presumption exists.  To the contrary, as described in detail in its June 17 brief in support

of Plaintiffs' motion for leave to file under seal (*see* DE 199 at 3-9, incorporated herein by

reference), UPMC has consistently maintained that there is no presumptive right of access to

discovery materials, and that these materials should be redacted upon a showing of good cause.

*See Wecht*, 484 F.3d at 212 & n.22.

### B.     The Special Master Correctly Applied The *Pansy* Good Cause Factors.

   Courts must "refuse[] to permit their files to serve as . . . sources of business information

that might harm a litigant's competitive standing."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

589, 598 (1978); *see also Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988).  "The

subject matter of confidential business information is broad, including a wide variety of business

information."  *Miles v. The Boeing Co.*, 154 F.R.D. 112, 114 (E.D. Pa. 1994).  Courts therefore

find good cause to seal materials whenever a litigant demonstrates that public disclosure would

work "a clearly defined and serious injury" to its business, commercial, or competitive interests.

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (cited at Objs. at 9).

   As Judge Schwab previously recognized, the Third Circuit in *Pansy* held that, when

applying the good cause standard to a motion to seal discovery materials, district courts may

consider—without any presumption in favor of access, *see Wecht*, 484 F.3d at 212—whether

(1) disclosure would violate any privacy interests; (2) the information is being sought for a

proper or improper purpose; (3) disclosure would embarrass a party; (4) the information is

important to public health and safety; (5) the sharing of information would promote fairness and efficiency; (6) a public entity seeks confidentiality; and (7) the case involves important public issues. *See WPAHS v. UPMC*, No. 2:09-cv-480, 2012 WL 512681, at *5 (W.D. Pa. Feb. 14, 2012) (citing *Pansy*, 23 F.3d at 787–91).  Like the non-public business information relating to the West Penn-Highmark affiliation that Judge Schwab sealed because it "could be used by competitors to gain an unfair business advantage," *id.* *7, UPMC's confidential business and strategic information should be redacted from any to-be-filed objections and exhibits to R&R #2, as Special Master Levie concluded.

*First*, Special Master Levie correctly found that revealing UPMC's sensitive business information would violate UPMC's "privacy interests," *id.* *5, and visit "clearly defined and serious injury" upon it, *Publicker*, 733 F.2d at 1071; *see also* R&R #3 at 12.  Indeed, courts routinely have sealed, redacted, or otherwise protected from public disclosure information indistinguishable from that at issue here.  *See, e.g.*, *LEAP Sys., Inc. v. Moneytrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (protecting "secretive business information"); *Honeywell Int'l, Inc. v. Nikon Corp.*, No. 04-1337-JJF, 2010 WL 744535, at *3 (D. Del. Mar. 2, 2010) (protecting business strategy documents); *Heller v. Shaw Indus., Inc.*, No. 95-7657, 1997 WL 786542, at *5-6 (E.D. Pa. Nov. 20, 1997) (protecting internal documents bearing on the company's performance, market analysis, and competitive position).  Courts within the Third Circuit recognize that the public cannot "claim any strong 'right to know' a company's . . . market analysis" and that a business has "clear and distinct privacy interests" in its "confidential research."  *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-cv-4649, 2012 WL 1521954, at *6 (E.D. Pa. Apr. 30, 2012); *Agrizap, Inc. v. Woodstream Corp.*, No. 04-3925, 2005 WL 1772675, at *2 (E.D. Pa. July 28, 2005).

Although the actual substance of the seven documents at issue was mentioned only briefly in Plaintiffs' motion to compel papers submitted to Special Master Levie, these documents contain high-level, confidential communications involving UPMC's most senior executives and its business, legal, and market strategies.  *See* Farner Decl. ¶¶ 4–13 (June 20 *in camera* hearing Ex. B.1); Supp. Farner Decl. ¶¶ 18−29 (June 20 *in camera* hearing Ex. B.2). UPMC faces many of the same business, legal, and market opportunities and challenges it faced at the time these documents were created.  *See* Farner Decl. ¶ 6; Supp. Farner Decl. ¶ 19, 22, 25−27, 29.  And, as Special Master Levie recognized, UPMC continues to develop and employ business, legal, and market strategies similar or identical to those disclosed in the documents, and to use the methods, factors, or personnel disclosed in the documents to do so.  *See* R&R #3 at 12 (citing Farner Decl. ¶¶ 4−13; Supp. Farner Decl. ¶¶ 18−29).

In fact, as Highmark works to complete its affiliation with West Penn, Highmark has made no secret that it intends to steer tens of thousands of patients from UPMC to West Penn and other facilities in Highmark's provider network.  *See* Ex. 4 (Testimony of D. Rice Before the Pa. S. Maj. Policy Comm. (Aug. 1, 2012)) at 5.  The Pennsylvania Insurance Department and its consultants concluded, based on information provided by Highmark, that the success of the Highmark-West Penn affiliation hinges largely on whether Highmark can "incentivize patients to select West Penn . . . instead of UPMC" and "incentivize physicians to use West Penn . . . instead of UPMC."  *See* Ex. 5 (May 31, 2013 PID Findings and Conclusions) at ¶ 188; Ex. 6 (Apr. 25, 2013 Blackstone Rep.) at 94;  Ex. 7 (Apr. 24, 2013 Compass-Lexecon Rep.) at 90.

Thus, public disclosure of UPMC's confidential information "could be used by competitors to gain an unfair business advantage."  *WPAHS*, 2012 WL 512681, at *7.  Indeed, revealing this information would not benefit some hypothetical competitors, but rather provide

Highmark and West Penn—parties to these cases that have staked the future of their provider network on harming UPMC—an unfair competitive advantage in this rapidly changing healthcare market.  *See* Farner Decl. ¶¶ 4−13; Supp. Farner Decl. ¶¶ 18−29.  As Special Master Levie rightly held, disclosure "would grant UPMC competitors insight into UPMC's competitive tactics and thereby injure UPMC's ability to compete in the current marketplace."  R&R #3 at 12.  And "[t]o the extent that the documents address business strategies upon which UPMC relied during an earlier time, UPMC has put forth credible and convincing evidence that certain similar or identical strategies are still in use today."  *Id.*  Special Master Levie thus properly rejected the Post-Gazette's argument that some of the documents are "over eight years old."  Objs. at 19; R&R #3 at 12.  Instead, in the current context of the Western Pennsylvania healthcare market, disclosure would work a clearly defined and serious injury on UPMC, unfairly allowing its competitors to "compete more effectively."  *See Grant Heilman*, 2012 WL 1521954, at *6.

*Second*, the Special Master correctly held that UPMC is not seeking to redact information "important to public health or safety," but instead "material that concerns business strategies and competitive tactics [that] remain relevant today and [whose] release might injure UPMC."  R&R #3 at 13.  Indeed, the Post-Gazette's contention that UPMC's business information necessarily relates to the cost of healthcare and, thus, to "public health and safety," Objs. at 19–20, is a vast oversimplification, *see* R&R #3 at 13.  The mere fact that UPMC is "involved in the healthcare industry . . . does not mean that the information itself is of such importance to public health or safety that any UPMC interest in privacy is irrelevant."  *Id.*  "To the contrary," the Post-Gazette's view "would mean that *any* material generated by UPMC, including that containing exceptionally sensitive business information, could be freely released to UPMC's competitors simply as a result of the nature of UPMC's business."  *Id.* (emphasis in the original).  "This

outcome would be unacceptable and arguably would work ultimately against the interests of the public by negatively impacting UPMC's ability to compete in the marketplace." *Id.*

*Third*, disclosing UPMC's confidential business information "will not promote fairness and efficiency" in this litigation because the substantive information contained in the discovery documents at issue was mentioned only briefly in the underlying motion to compel, and by agreement of the parties, UPMC produced the information to opposing counsel in reliance on the "Highly Confidential—Outside Counsel/Experts Only" designation. *See Pansy*, 23 F.3d at 787. The parties have withdrawn any objections to UPMC's use of that designation here, *see* Ex. 1, and Plaintiffs' previously-planned objections to R&R #2 are largely moot and may never be filed in light of the Court's dismissal of the *Royal Mile* case and West Penn's express lack of desire to continue the other cases. *See* Order (DE 241); Joint Mot. to Stay at 2 (DE 230).

The Post-Gazette therefore is wrong when it suggests that this factor is "essentially neutral" because the fact that the material "has already been disclosed to the parties," Objs. at 20, militates *against* any broader disclosure, *see WPAHS*, 2012 WL 512681, at *5. And the Post-Gazette mischaracterizes *Arnold v. PennDOT*, 477 F.3d 105, 110 (3d Cir. 2007) (Objs. at 20), a case in which the court held that this factor weighed *against* disclosure and was not "neutral."

*Fourth*, as the Post-Gazette recognizes, *see* Objs. at 20, none of these documents were drafted by or shared with any public entity or official. Once again, however, that fact does not make this factor "neutral," *id.*, but instead counsels in favor of maintaining the confidentiality of UPMC's business information, *WPAHS*, 2012 WL 512681, at *5.

*Finally*, there is no public interest in disclosure sufficient to outweigh UPMC's significant privacy interest in the targeted redactions. *See id.* And while this case "may well involve matters of interest to the public, it was initiated by private parties and has been litigated

by private parties." R&R #3 at 7. Thus, even though the purpose of the Sherman Act may be to protect the public, that fact does not elevate this private civil dispute to the same level of public interest as a criminal prosecution. *See id.*; Objs. at 17 (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) and *Wecht*, 484 F.3d 194). Any interest the public might have in this case *generally*, *see* Objs. at 17, does not establish a *specific* public interest in disclosure of the seven discovery documents at issue here, *see Grant Heilman*, 2012 WL 1521954, at *6. The Court should uphold the targeted redactions of UPMC's confidential business information recommended by R&R #3.

## II.   THE SPECIAL MASTER CORRECTLY HELD THAT THERE IS NO FIRST AMENDMENT RIGHT OF ACCESS TO THE DISCOVERY DOCUMENTS.

The Post-Gazette attempts to blunt the force of Special Master Levie's finding of good cause for targeted redactions by arguing that he erred in failing to recognize a First Amendment right of public access to discovery materials. *See* Objs. at 6. Yet the Post-Gazette cites *no* case recognizing such a right, does not even mention that *every* federal circuit court to consider the question has held that no such right exists, and overlooks that UPMC satisfied any First Amendment standard in any event. *See id.* at 6–12.

### A.   The Special Master Properly Applied The Experience And Logic Test.

Courts apply the two-part "experience and logic" test to determine whether the First Amendment confers on the public a right to access documents related to judicial proceedings. *See, e.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). Under that test, courts "consider[] first whether the 'process has historically been open to the press and general public,' and second, 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Wecht*, 484 F.3d at 208 n.19 (quoting *Press-Enterprise Co. v. Superior Court*, 487 U.S. 1, 8 (1986)). Every federal circuit to have considered the question

has held, based on experience and logic, that "there is no presumptive first amendment public right of access to documents submitted to a court in connection with discovery motions." *Anderson*, 805 F.2d at 13; *see also Chicago Tribune*, 263 F.3d at 1310.

The Special Master properly adhered to these authorities when he concluded "that access based upon the First Amendment does not apply to discovery motions and supporting documents." R&R #3 at 10. *First*, the Special Master noted under the experience prong that the Supreme Court "has determined that the civil discovery process has not traditionally been open to the public." *Id.* at 8 (citing *Seattle Times*, 467 U.S. at 32–33); *see also Seattle Times*, 467 U.S. at 33 (pretrial discovery proceedings "are not public components of a civil trial," so "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information" (quoted in R&R #3 at 8)). Moreover, "[w]hile *Seattle Times* addressed discovery materials that had not been filed with the district court, *Leucadia* extended the Supreme Court's holding to filed discovery attached to discovery motions." R&R #3 at 8; *see also Leucadia*, 998 F.2d at 165. And in *Anderson*, the First Circuit rejected the very First Amendment argument that the Post-Gazette advances here based on its recognition that "there [is] no tradition of public access" to discovery whether or not it is filed in court. 805 F.2d at 12. Thus, there is no historical right of access, and historical "experience" precludes extension of a First Amendment right of access to discovery motions and exhibits.

*Second*, the Special Master correctly recognized that "*Seattle Times* and *Leucadia* also suggest that the 'logic' prong recommends against a finding of a First Amendment right to discovery motions and supporting documents." R&R #3 at 9. In the first place, "requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process." *Leucadia*, 998 F.2d at 163 (quoted at R&R #3 at 9). And because "[t]he

- 11 -

trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery[,] heightened First Amendment scrutiny . . . would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals." *Seattle Times*, 467 U.S. at 36 & n.23 (quoted at R&R #3 at 9).

Moreover, granting the public a First Amendment right of access to discovery materials would thwart the discovery process and erode litigants' willingness to participate in it. *See* R&R #3 at 10. Indeed, the fact that recognition of a First Amendment right "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands," *Leucadia*, 998 F.2d at 164, "would likely lead to increased resistance to discovery requests," *Chicago Tribune*, 263 F.3d at 1312 n.10; *see also Anderson*, 805 F.2d at 12 ("[I]f such access were to be mandated, the civil discovery process might actually be made more complicated and burdensome than it already is."). Thus, logic also dictates that there is no First Amendment right of public access to discovery motions and exhibits. *See* R&R #3 at 10.

**B.    The Post-Gazette Ignores The Governing Cases.**

The Post-Gazette makes no mention of *any* of the cases rejecting a First Amendment right of access to discovery motions or materials. *See* Objs. at 6–12. The Post-Gazette, moreover, cites *no* case that has recognized such a right. *See id.* And the Post-Gazette concedes that "the Third Circuit has never directly addressed the issue of the application of the First Amendment to access to discovery motions and materials in a civil proceeding." *Id.* at 7–8. The Post-Gazette nonetheless offers four arguments in support of its position that the Court should break new ground and recognize a First Amendment right here, none of which is persuasive.

*First*, the Post-Gazette suggests that *Leucadia* is irrelevant because it "was limited to analysis of a common-law right of access." *Id.* at 8. But as the Special Master pointed out, the

*reasoning* of *Leucadia* informs both prongs of the experience and logic test, and underscores that there is no First Amendment right of access to discovery motions and materials. *See* R&R at 8-9.

The Post-Gazette's retreat to the unelaborated position that the Third Circuit "narrowed the holding" of *Leucadia* in *Wecht*, Objs. at 8, fares no better. *Wecht* was a criminal case involving the disclosure of *Brady* materials, not a civil case involving the disclosure of private discovery. *See* 484 F.3d at 209. The Third Circuit thus left "the discovery-nondiscovery dichotomy that *Leucadia* established in the civil context" intact in *Wecht*, but reasoned that it had no application to "the unique nature of *Brady* materials" because "*Brady* materials, *unlike civil discovery*, are turned over by the government to the defense during its prosecution of alleged criminals on behalf of the public." *Id.*; *see also id.* at 210. Thus, far from "narrowing" *Leucadia*, *Wecht* affirms its vitality in the civil discovery context. *See, e.g.*, R&R #3 at 5–6.

*Second*, the Post-Gazette recites the irrelevant fact that "[o]ther Circuits have held that there is a First Amendment right of access for other documents related to the adjudicatory process beyond regular pleadings." Objs. at 11. But the Post-Gazette's cases are inapposite because they involve criminal proceedings, *see Globe Newspaper*, 457 U.S. at 606; *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993), docket sheets, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004), and non-discovery motions, memoranda, and proceedings, *see In re Providence Journal Co.*, 293 F.3d 1, 10−13 (1st Cir. 2002); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991); *Publicker*, 733 F.2d at 1070. Thus—as the Post-Gazette's own cases recognize—those cases have no bearing on public accessibility of discovery materials, which are "fundamentally different from proceedings to which the courts have recognized a public right of access." *Anderson*, 805 F.2d at 12; *see Hartford Courant*, 380 F.3d at 100 (distinguishing "discovery materials" and "docket sheets").

- 13 -

*Third*, the Post-Gazette relies on discredited state cases. The Post-Gazette points to the District of Columbia Court of Appeals' decision in a common law right of access case, *Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. 1988), *see* Objs. at 10, but fails to mention that the Third Circuit *rejected Mokhiber* and its view of history in *Leucadia*, *see* 998 F.2d at 163–65. The Post-Gazette also cites *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 970 A.2d 656 (Conn. 2009), even though the intervenors there "did not assert any first amendment right of access to the documents in question" and the court "confine[d] [its] analysis to the presumption of access as provided by the [Connecticut] rules of practice in light of the common law," *id.* at 673 n.22.

The Post-Gazette's application of the logic prong rests on its assertion that "the established logic of having open civil proceedings applies with equal force to a discovery motion." Objs. at 11. Of course, the criminal case and nondiscovery civil case that the Post-Gazette cites, *see id.* (citing *Globe Newspaper*, 457 U.S. at 606; *Republic of Philippines*, 949 F.2d at 664), do not support that assertion. Moreover, the Post-Gazette's claim that a failure to extend the First Amendment right of access to discovery motions and materials "defeat[s] . . . the public access to and understanding of the adjudicatory process" and leaves the public with "the proverbial 'half the story,'" (Objs. at 12), assumes that the public has a right to access discovery materials. And it grossly misstates the law: even without a First Amendment right of access, a party must still establish good cause to seal documents. *See infra* Part I.

*Fourth*, the Post-Gazette contends that "the Special Master's findings are a nullity because he did not apply the First Amendment standard to the sealing of the documents," which, in the Post-Gazette's view, permits redactions only where "narrowly tailored" and "essential to preserve a countervailing interest" that "outweighs the public's interest in disclosure." Objs. at 9 (citing *Publicker*, 733 F.2d at 1070). But the Post-Gazette's premise that *Publicker* erected a

First Amendment standard for redactions that is more demanding than the common law standard, *see id.*, is simply incorrect.  While *Publicker* suggested that "to limit the public's access to civil *trials* there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest," 733 F.2d at 1070 (emphasis added), *Publicker* did not indicate that this rule applied to *discovery documents* or affected the conclusion that "confidential commercial information" qualifies for protection against public disclosure.  *See id.* at 1071.

But even if this statement prescribed some higher standard than good cause here, UPMC would clearly satisfy it because UPMC has identified an important interest in protecting its confidential commercial information.  *See, e.g.*, *Warner Commc'ns*, 435 U.S. at 598 (courts must prevent records from being used as "sources of business information that might harm a litigant's competitive standing"); *Publicker*, 733 F.2d at 1073 ("an interest in safeguarding a trade secret may overcome a presumption of openness").  The targeted redactions recommended by the Special Master are the least restrictive available remedy because they protect UPMC's confidential information without withholding any additional information, entire documents, or the entire record.  Thus, even if the First Amendment conveyed a public right of access here, R&R #3 would remain correct and should be adopted.

## III.   THE POST-GAZETTE HAD NO RIGHT TO PARTICIPATE IN THE *IN CAMERA* HEARING, AND NO FURTHER HEARING IS REQUIRED.

The Post-Gazette's final argument—that its "due process rights" were violated by its exclusion from the *in camera* hearing before the Special Master, *see* Objs. at 12–16—fares no better.  The Court already has considered and rejected this argument, and as the Court correctly concluded the first time, the public has *no* right to access documents *before* the Court has had an opportunity to rule on their confidentiality.

- 15 -

To the contrary, when a non-party challenges redaction of confidential information, the proper procedure is for the Court to assess the documents *in camera*. "*[I]n camera* inspection is a commonly-used procedural method for determining whether information should be protected or revealed to other parties." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1112, 1136 n.6 (9th Cir. 2003). In fact, a court has "few, if any, alternatives to *in camera* inspection that do not defeat the purpose of the rules and privileges protecting confidential material." *Id.*[2] The Third Circuit adopted a similar approach in *Leucadia*, where it explained that a court should "conduct a review of the documents" *in camera* in order to assess whether disclosure might cause competitive harm. 998 F.2d at 167; *see also Leap Sys.*, 638 F.3d at 219 (affirming denial of motion to unseal on the merits where district court denied intervenor access to sealed transcript).

The Post-Gazette relies heavily on *Publicker*, *see* Objs. at 9, but that decision *proves that in camera* review was necessary here. The Third Circuit explained in *Publicker* that because disclosure can destroy information's sensitive or confidential character, "it would be in the sound discretion of the district court to consider an alleged confidential problem '*in camera* but with counsel present and on the record.'" 733 F.2d at 1071 (quoting *Press-Enterprise Co.*, 464 U.S. at 512) (cited at Objs. at 14). Thus, the Third Circuit held that the district court properly excluded the press from a hearing regarding disclosure of "sensitive" or "confidential" information where it articulated the commonsense point that "[i]f I were to permit the newspapers in here you would be usurping my function in deciding the case before I did by

---

[2] *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 662 (8th Cir. 1983) ("Trade secrets are a peculiar kind of property. Their only value consists in their being kept private. If they are disclosed or revealed, they are destroyed. Therefore, it makes no sense to say that a determination whether trade secrets are involved should be made in open court, with the hearing to be later closed only if the determination is that they are involved."); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980) (holding, in certain circumstances, "disclosure . . . would effectively nullify the[] claim of privilege without a hearing on the merits").

revealing information, even though I [might] ultimately decide that it shouldn't be revealed." *Id.*

This Court thoughtfully applied these precedents when it articulated the countervailing interests and made specific findings explaining its decision to authorize the *in camera* hearing. *See* Ex. 2 at 9–28. As the Court explained, permitting the Post-Gazette or its counsel to participate in that hearing would have jeopardized UPMC's confidential information because once an outside party "see[s] the information, at least to that extent it is no longer confidential, [even though] the Court has not yet made a determination about" its confidentiality. *Id.* at 13. Moreover, permitting such participation would allow *any* member of the public to "come in and say, I want to do this and I want my counsel to have this same right, . . . then it becomes so open that anybody can send their counsel in to hear" UPMC's confidential information. *Id.* at 24.

Even though it excluded the Post-Gazette from the *in camera* hearing, the Court and Special Maser allowed the Post-Gazette to file at least ten briefs regarding UPMC's targeted redactions, to present argument regarding closure of the *in camera* proceedings, and to receive redacted copies of the briefs and documents that UPMC submitted to the Special Master. *See, e.g.*, DE 201, 210, 212. Those documents included a redacted version of the Farner declaration, UPMC's redaction log, and redacted versions of the seven documents at issue. *See* Ex. 3. Thus, the Post-Gazette's suggestion that it never received any of these relevant materials, *see* Objs. at 12, is misleading at best. In fact, the Post-Gazette occupied the same position as objecting parties in privilege disputes, who may receive redacted briefs and documents but are excluded from the *in camera* hearings "all the time." Ex. 2 at 29.

The Post-Gazette nonetheless asks the Court to retract its prior correct ruling authorizing the *in camera* hearing, *see* Objs. at 12–16, but none of the Post-Gazette's six arguments warrants returning this dispute to square one, much less convening *another* hearing for the Post-Gazette.

*First*, the Post-Gazette—without a single citation to authority—argues that "because First Amendment rights are implicated in the sealing of discovery materials, the abridgement of those rights can be accomplished, if at all, only within a procedure that comports with the rudiments of due process." *Id.* at 14. The Post-Gazette—again without any citation to authority—asserts that the rudiments of due process "requires" that it "be given a meaningful opportunity to review and respond to the evidence and arguments that the parties seeking to seal records adduce." *Id.* Of course, the Post-Gazette's premise is flawed because there is *no* First Amendment right of access to discovery materials. *See supra* Part II.[3] The Post-Gazette, moreover, cites no case explaining—and does not illuminate—how due process could possibly mandate granting it a right to review discovery documents *before* the Court adjudicates whether any such right exists. Thus, the Post-Gazette unsurprisingly ignores that the "rudiments of due process" do *not* require the counterintuitive outcome of granting pre-ruling access to confidential information produced only in discovery. *See Publicker*, 733 F.2d at 1071; *Foltz*, 331 F.3d at 1136 n.6; *In re Iowa Freedom of Info. Council*, 724 F.2d at 662; *Crystal Grower's Corp.*, 616 F.2d at 461.

*Second*, the Post-Gazette notes the irrelevant fact that the Third Circuit in *Publicker* held that the district court violated the public's right to access when it closed a preliminary injunction hearing without providing any "explanation for the reasons for closure." Objs. at 14–15. Yet that portion of *Publicker* is wholly consistent with the other portion of the opinion *upholding* closure of a hearing regarding disclosure of "confidential" or "sensitive" information that—as here—*was* supported by an adequate explanation. *See* 733 F.2d at 1071; Ex. 2 at 9–28.

---

[3] The Post-Gazette curiously asserts that *Seattle Times* "explained that the First Amendment applied to a request for discovery materials not to be filed with the Court," Objs. at 13, when, in fact, *Seattle Times* held that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit" such that a protective order entered for good cause "does not offend the First Amendment," 467 U.S. at 32, 37.

*Third*, the Post-Gazette complains that it occupies a similar position as the media outlet in *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89 (3d Cir. 1990), because its exclusion from the *in camera* hearing "handicapp[ed]" its ability to brief and argue the propriety of the targeted redactions.  Objs. at 15.  The Post-Gazette, however, misrepresents *Capital Cities*: that case involved access to *transcripts* in a *criminal trial*, not *discovery* materials in *civil* litigation.  *See* 913 F.2d at 92–93 (distinguishing *Seattle Times*). Moreover, the hearing ordered in *Capital Cities* was a hearing to allow the media outlet to move for access to the sealed transcripts, *not* a hearing at which the transcripts would be disclosed to it, or discussed in its presence, prior to a ruling on whether to keep them under seal.  *See* 913 F.2d at 95, 98.  This Court, of course, already convened such a hearing.  *See* Ex. 2.

*Fourth*, the Post-Gazette contends that the *in camera* hearing was tainted because the Special Master "considered at least two *ex parte* affidavits" in "violat[ion] [of] this Court's June 13, 2013 Text Order."  Objs. at 12.  But the Court's Order did *not* forbid the Special Master from considering UPMC's affidavits—nor could it because the Court *confirmed* at the June 13 hearing that UPMC *could* submit its affidavits at the *in camera* hearing.  *See* Ex. 2 at 37–38.  Moreover, the Post-Gazette does not explain *how* UPMC could meet its burden—which the Post-Gazette describes as "high," Objs. at 14—if it were prohibited from introducing evidence proving that public disclosure of its redacted information would harm it.  UPMC, in reality, submitted its evidence at the June 20 hearing without objection from the Court, Special Master, or any party.

*Fifth*, the Post-Gazette's suggestion "that counsel for a third-party Declarant . . . was present inside the *in camera* hearing at some point" (Objs. at 16), is demonstrably false.  No third party or its counsel appeared at the hearing.  Instead, the Special Master's protection of confidential information was so scrupulous that he "excused . . . in-house counsel" from portions

- 19 -

of the hearing "to permit certain arguments and representations to be made in the presence of outside counsel only."  R&R #2 (No. 12-cv-692, DE 207) at 4 n.4.

*Finally*, the Post-Gazette makes repeated reference to some *future* "required hearing" before the Court regarding the Special Master's recommendation, and suggests that it will provide more "detailed briefing" and argument then.  Objs. at 9.  But the Post-Gazette cites precisely *nothing* to suggest that such a hearing is required.  Nor could it do so: nothing in this Court's Order appointing the Special Master or in Federal Rule of Civil Procedure 53 requires this Court to hold a hearing as part of its *de novo* review.  *See* DE 84 ¶ 16; Fed. R. Civ. P. 53.  In fact, the "opportunity to be heard" required by Rule 53(f) "can be satisfied by taking written submissions when the court acts on the report without taking live testimony."  Fed. R. Civ. P. 53, Adv. Committee Notes, 2003 Amd.; *see also Commissariat a l'Energie Atomique v. Samsung Electrs. Co.*, 245 F.R.D. 177, 179 (D. Del. 2007); *Net2phone, Inc. v. Ebay, Inc.*, No. 06-2469 (KSH), 2008 WL 8183817, *3 (D.N.J. June 26, 2008).  And there is no reason to convene a hearing here, where extensive briefing has already been submitted, significant efforts already have been expended, the Court participated in the *in camera* hearing, no live testimony would be adduced, and the Special Master correctly resolved the issues that are now largely moot.

## CONCLUSION

For all of these reasons, the Court should adopt Report & Recommendation #3.

Dated:  October 15, 2013

/s/ *Rebekah B. Kcehowski*
Paul M. Pohl (Pa. No. 21625)
Leon F. DeJulius, Jr. (Pa. No. 90383)
Rebekah B. Kcehowski (Pa. No. 90219)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
pmpohl@jonesday.com
lfdejulius@jonesday.com
rbkcehowski@jonesday.com

Joe Sims (*Pro Hac Vice* granted)
Kathy Fenton (*Pro Hac Vice* granted)
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
jsims@jonesday.com
kmfenton@jonesday.com

Paul H. Titus (Pa. No. 01399)
Keith E. Whitson (Pa. No. 69656)
SCHNADER HARRISON SEGAL & LEWIS
LLP
Fifth Avenue Place, Suite 2700
Pittsburgh, PA  15222-3001
Tel: (412) 577-5200
Fax: (412) 765-3858
ptitus@schnader.com
kwhitson@schnader.com

*Attorneys for UPMC*