IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROYAL MILE COMPANY, INC.**, **PAMELA LANG** and **COLE'S WEXFORD HOTEL, INC.**, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>**v.**<br><br>**UPMC and HIGHMARK, INC**.,<br><br>Defendants. | **Case No. 10-1609** |

**MEMORANDUM OPINION**

## I. Introduction

Discovery disputes in this case, with the consent of the parties, are referred to a special master. (ECF No. 92.) In accordance with the agreed upon procedures, plaintiffs Royal Mile Company, Inc., Pamela Lang, and Coles Wexford Hotel, Inc. (collectively with Royal Mile Company, Inc. and Pamela Lang, "Royal Mile plaintiffs") and West Penn Allegheny Health System ("WPAHS")[1] submitted to the special master a discovery dispute concerning whether defendant UPMC should be compelled to respond to certain discovery requests. In Report and Recommendation No. 2, the special master recommended that the court deny the motion to compel submitted to the special master by the Royal Mile plaintiffs and WPAHS against UPMC. (ECF No. 165.) On April 16, 2013, the Royal Mile plaintiffs filed a motion for leave to file under

---

[1] WPAHS was a plaintiff in a related consolidated case, civil action number 12-692. Civil action number 12-692 was dismissed prior to the issuance of this opinion, and the motion to compel as it pertains to WPAHS seeking UPMC to produce certain discovery is moot.

seal their objections to the special master's Report and Recommendation No. 2. (ECF No. 166.) That motion was referred to the special master.

On September 16, 2013, the special master issued Report and Recommendation No. 3. (ECF No. 239.) In Report and Recommendation No. 3, the special master recommends the standard the court should apply to determine whether sealing is warranted, i.e., whether the court should address the motions to seal under Federal Rule of Civil Procedure 26, the common law, or the First Amendment to the United States Constitution, and applies the appropriate standard to the documents at issue to recommend which parts of the documents, if any, should be withheld from public view.[2] The special master recommends that the court grant in part and deny in part the motion for leave to file under seal filed by the Royal Mile plaintiffs and WPAHS. (ECF No. 239 at 21-22.)

On September 30, 2013, third party intervener PG Publishing Co. ("The Post-Gazette") filed objections to Report and Recommendation No. 3. (ECF No. 243.) On October 15, 2013, UPMC filed a response in opposition to the Post-Gazette's objections to Report and Recommendation No. 3.[3] (ECF No. 244.)

---

[2] The special master's recommendations are based upon evidence submitted to him during an *in camera* hearing held on June 20, 2013.

[3] The Royal Mile plaintiffs and WPAHS filed the motion for leave to file under seal their objections to the special master's Report and Recommendation No. 2, pursuant to stipulated protective orders entered into by the parties in this action and in civil action number 12-692. (ECF No. 166 at 2.) The Royal Mile plaintiffs and WPAHS asserted their objections and supporting exhibits contained information designated "Highly Confidential – Outside Counsel/Experts Only" by UPMC. (Id.) Because UPMC's allegedly confidential information is at issue in the motion for leave to file under seal filed by the Royal Mile plaintiffs and WPAHS, UPMC—not the Royal Mile plaintiffs and WPAHS—responded to The Post-Gazette's objections to Report and Recommendation No. 3, arguing the special master correctly recommended that certain parts of the exhibits the Royal Mile plaintiffs and WPAHS want to attach to their objections to Report and Recommendation No. 2 should be filed under seal.

Having reviewed the parties' original submissions, Report and Recommendation No. 3, the objections filed by The Post-Gazette, and the response filed by UPMC, attended the *in camera* hearing before the special master on June 20, 2013, and heard oral argument on November 18, 2013, the court will adopt Report and Recommendation No. 3 as the opinion of the court.

## II. Discussion

In The Post-Gazette's objections to Report and Recommendation No. 3, The Post-Gazette argues that the special master improperly considered *ex parte* affidavits, improperly permitted counsel for a third-party declarant to attend the *in camera* hearing, applied the wrong standard, and, to the extent the good cause standard is applicable, erred in applying that standard to the documents in issue.

### A. *In Camera* Hearing

The purpose of the *in camera* hearing was for the proponents of sealing to present argument and evidence with respect to the reasons the documents should be filed under seal. The court explained:

> [W]e will have a hearing here in Pittsburgh where the parties will be able to look at the material in question and argue why this specific document meets that specific standard and why. Then the special master will be able to assess, and I will be able to observe this hearing, and he will be able to then make a report and recommendation with specific findings about why a particular document meets that standard or not.

(H.T. 6/13/13 (Civ. Action No. 12-692, ECF No. 180) at 36.) The court permitted the parties and The Post-Gazette to submit unredacted briefs to the special master addressing the law applicable to the motion to seal prior to the *in camera* hearing.

At the *in camera* hearing, the parties advocating sealing had the opportunity to present argument and evidence with respect to why the need to file the documents under seal outweighed

the public's presumptive right of access. The court notes this issue involves a public right of access not limited to the press. In other situations, such as claims of privilege, courts routinely review materials *in camera*. The documents and submissions requested to be sealed relate to documents of UPMC. UPMC argued the documents contain highly confidential information, including "high level" information about "sensitive business and strategic information and communications," that if disclosed, "would work a clearly defined and serious injury on UPMC." (ECF No. 199 at 18.) The court concluded the only practical way to determine whether those interests warranted sealing of certain documents and submissions to the court would be to have an *in camera* hearing to review the documents in issue and hear the parties' arguments. The court cannot in a vacuum assess whether the information was "high level" or contained sensitive business strategy. To make that kind of determination, the court needed to hear why the information should be classified in that manner.

**B. Affidavits**

The court permitted the parties to submit affidavits to the special master for *in camera* consideration in lieu of live testimony at the *in camera* hearing.[4] The same reasons that

---

[4] At the June 13, 2013 hearing, the following exchange took place between the court and counsel for UPMC:

> COUNSEL FOR UPMC: Among the materials that were submitted to Special Master Levie were some declarations in support of our arguments that particular documents should be sealed.
>
> THE COURT: They weren't filed of record, were they?
>
> COUNSEL FOR UPMC: They weren't. They were submitted to Special Master Levie.
>
> THE COURT: You can bring those to the hearing.

*...Continued*

necessitated the *in camera* hearing to review the documents and to hear the parties' arguments necessitated the *in camera* review of the affidavits. The affidavits were submitted to explain why the documents should be filed under seal. In order to explain why a document should be filed under seal, the affiant would need to discuss the information contained in the document. If the affidavits were made public, the information in issue would of necessity be disclosed. It would be incongruous to have an *in camera* review of the documents but not an *in camera* review of the affidavits, which explain why the documents should be filed under seal. The special master did not err by considering this kind of evidence.

**C. Third Party**

In its objections to Report and Recommendation No. 3, The Post-Gazette argues the special master violated The Post-Gazette's due process rights by permitting counsel for a third-party declarant to attend the *in camera* hearing. The court attended the *in camera* hearing. Counsel for a third-party declarant was not in attendance for any part of the proceeding. The Post-Gazette's objection is, therefore, moot.

**D. Standard**

The Post-Gazette objects to Report and Recommendation No. 3, arguing "the special master erred in not finding that The Post-Gazette had a First Amendment right of access to the discovery objections." (ECF No. 243 at 6.) The special master noted that "[t]here are three

---

*Continued from previous page*

> COUNSEL FOR UPMC: Can we do that by declaration rather than bring the witnesses live?
>
> THE COURT: Yes.

(H.T. 6/13/13 (Civ. Action No. 12-692, ECF No. 180) at 37.)

potential bases under which a third party or the public may seek access to sealed material: the common law; the First Amendment, and by opposing a Federal Rule of Civil Procedure Rule 26(c) motion for entry of a protective order." (ECF No. 239 at 5.) As pointed out by the special master and The Post-Gazette, the Court of Appeals for the Third Circuit has held that the common law right of access does not apply to discovery materials, but has not addressed whether the First Amendment right of access applies to discovery motions and supporting material. The Post-Gazette argues the special master erred by not recommending that the court apply the more rigorous First Amendment right of access standard to the discovery materials filed by the Royal Mile plaintiffs.

In Report and Recommendation No. 3, the special master recommends that under the "experience and logic test" set forth by the court of appeals, "access based upon the First Amendment does not apply to discovery motions and supporting documents." (ECF No. 239 at 10) (citing N. Jersey Media Grp. Inc. v. Ashcroft, 308 F.3d 198, 205-06 (3d Cir. 2002).) The special master reasoned that the civil discovery process has not traditionally been open to the public, and public access to the discovery process "'would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals.'" (ECF No. 239 at 9) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32-33 (1984).) The special master noted that "'requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process.'" (ECF No. 239 at 9) (quoting Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164-65 (3d Cir. 1993).) Based upon these considerations, the special master concluded that experience and logic should lead the court to conclude the First Amendment right of access does not apply to the discovery materials at issue in this case.

The special master recommended the court apply the good cause standard set forth in Federal Rule of Civil Procedure 26(c) to determine whether the discovery materials filed by the Royal Mile plaintiffs should be filed under seal. The special master correctly articulated the good cause standard under Rule 26(c), explaining:

> Under Rule 26 (c), upon motion by a party, "for good cause shown… the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense… ." [Rossi v. New Jersey, 39 Fed. Appx. 706, 708 n. 7 (3d Cir. 2002) (citing Fed. R. Civ. P. 26 (c))]. "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." [Pansy, 23 F.3d at 786 (quoting Publicker, 733 F.2d at 1071)]. "The party seeking a protective order bears the burden of persuasion and '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test.'" [Rossi, 39 Fed. Appx. at 708 n. 7 (citing Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1108 (3d Cir.1986))].
>
> An assessment of good cause should consider the factors set forth in Pansy v. Borough of Stroudsburg, 23 F.3d 772. Those factors include:
>
> 1) whether disclosure would violate any privacy interests;
> 2) whether the information was being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information would cause a party embarrassment;
> 4) whether confidentiality was being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants would promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality was a public entity or official; and
> 7) whether the case involves issues important to the public.
>
> [West Penn Allegheny Health Sys. v. UPMC, 2012 WL 512681 at *5 (citing Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)); see Pansy, 23 F.3d at 787-89]. These factors are neither "neither mandatory nor exhaustive," but provide a useful framework for balancing UPMC's private interest in sealing against the public's interest in accessing the material at issue. (Glenmede Trust Co., 56 F.3d at 483).

(ECF No. 239 at 10-11.)

The Post-Gazette argues, however, that even if the good cause standard applies to the discovery documents in issue, the special master erred because he "fail[ed] to balance the rights of the public of access to a Sherman Act anti-trust proceeding regarding healthcare in Western Pennsylvania against UPMC's alleged need for secrecy of outdated documents." (ECF No. 243 at 18.) The Post-Gazette's argument lacks merit. In Report and Recommendation No. 3, the special master considered whether UPMC demonstrated good cause to overcome the public's right of access to the documents in issue by analyzing the Pansy factors relevant to this case. The special master concluded that with respect to the portions of the documents he recommended should be sealed, UPMC put forth sufficient evidence to show disclosure of the information "could injure UPMC's business interests or competitive standing." (ECF No. 239 at 14.) To the extent the documents refer to UPMC's business strategies that were employed during an earlier time, "UPMC [] put forth credible and convincing evidence that certain similar or identical strategies are still in use today." (ECF No. 239 at 12.) With respect to The Post-Gazette's argument that factor four, i.e., whether confidentiality is being sought over information important to public health and safety, "weighs heavily against closure," (ECF No. 243 at 19), the special master correctly noted that UPMC's participation in the health care industry "does not mean that the information itself is of such importance to public health or safety that any UPMC interest in privacy is irrelevant." (ECF No. 239 at 13.) The special master explained:

> This outcome would be unacceptable and arguably would work ultimately against the interests of the public by negatively impacting UPMC's ability to compete in the marketplace. Rather, UPMC should be permitted to seal material that concerns businesses [sic] strategies and competitive tactics if those strategies remain relevant today and their release might injure UPMC, unless those tactics are particularly relevant to public health and safety such that the failure to disclose that information is likely to have some significantly negative impact on public health.

(ECF No. 208 at 13 (citing FTC v. OSF Healthcare Sys., Civ. Action No. 11-50344, 2012 WL 1144620, at *1, *11 (N.D. Ill. Apr. 5, 2012).) After carefully considering whether UPMC set forth evidence to establish good cause for sealing the discovery documents in issue, i.e., whether UPMC set forth sufficient evidence to overcome the public's interest in accessing the documents, including analysis of each document and the Pansy factors relevant to this case, the special master determined the motion for leave to file under seal should be granted in part and denied in part.

Having reviewed Report and Recommendation No 3, The Post-Gazette's objections, the response filed by UPMC, and the materials underlying those filings, the court determines the special master did not err in recommending the court should apply the Rule 26(c) good cause standard to the discovery materials in issue, and recommending that the First Amendment and common law rights of access do not apply to those documents. As the court noted at the hearing held on June 13, 2013, the First Amendment and common law presumptive rights of access do not attach to discovery materials. (H.T. 6/13/13 (Civ. Action No. 12-692, ECF No. 180) at 7.) The special master did not, therefore, err in applying the Rule 26(c) good cause standard to the documents in issue; indeed, the special master granted in part and denied in part the motion for leave to file under seal only after careful consideration of the Pansy factors as they apply to each part of each discovery document in issue. Accordingly, the court adopts Report and Recommendation No. 3 as the opinion of the court.[5]

---

[5] As noted, The Post-Gazette argues the special master erred by not recommending that the court apply the more rigorous First Amendment right of access standard to the discovery materials filed by the Royal Mile plaintiffs and WPAHS. The court, however, commented at the hearing on November 19, 2013, that even if the Post-Gazette is correct, the outcome would be the same. The evidence presented by UPMC met the more rigorous First Amendment standard. Publicker

*...Continued*

On or before January 10, 2014, the Royal Mile plaintiffs shall file their objections to Report and Recommendation No. 2 and documents in support of the objections in accordance with the special master's directives as set forth in Report and Recommendation No. 3.

An appropriate order will be entered.

Dated: January 6, 2014 /s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

---

*Continued from previous page*
Industries, Inc. v. Cohen, 733 F.2d 1059, 1070 (3d Cir. 1984). To the extent the special master erred by concluding the First Amendment right of access does not apply to discovery materials, the error was harmless.