IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COLE'S WEXFORD HOTEL, INC.** *on their own behalf and on behalf of all others similarly situated* | CIVIL ACTION NO. 10-1609 |
| Plaintiffs, | |
| v. | |
| **UPMC** *and* **HIGHMARK, INC.,** | |
| Defendants. | |

# OPINION

CONTI, Chief District Judge

A special master was appointed in this case to provide the court and parties assistance with discovery, including the resolution of discovery disputes. Plaintiff Cole's Wexford Hotel, Inc. ("Cole's Wexford") and defendant UPMC ("UPMC") submitted a discovery dispute to the special master with respect to UPMC's obligations[1] to produce to Cole's Wexford 852 documents[2] that UPMC in 2007 produced to the Department of

---

[1] As Cole's Wexford points out, UPMC agreed to produce and this court ordered on the record at a hearing held on May 30, 2012, that UPMC produce to Cole's Wexford the documents it previously produced to the DOJ. (H.T. 5/30/12 (ECF No. 250-1) at 27.) UPMC at that time did not argue to the court that any of the documents were privileged. UPMC attached to its response in opposition to Cole's Wexford's objections to the special master's report and recommendation an affidavit from counsel who represented UPMC at the hearing on May 30, 2012. At the time of the hearing, it was his "assumption that all privileged documents had been removed from the DOJ production" by UPMC's previous counsel." (ECF No. 264-7 ¶ 8.) In other words, UPMC at the time of the hearing was not aware of the additional inadvertent disclosures of privileged documentation to the DOJ.

[2] UPMC asserts that 177 documents should be entirely withheld and the remainder would be provided with redactions.

Justice ("DOJ") in response to a civil investigative demand made by the DOJ. Cole's Wexford[3] argues that UPMC's production to the DOJ waived any privilege that might have previously pertained to the documents. (ECF No. 250 at 1-2.) UPMC as part of its production to the DOJ produced documents it claims are subject to the attorney-client privilege.[4] The special master concluded that—pursuant to Federal Rule of Evidence 502(b) and the applicable case law[5]—UPMC's inadvertent disclosure to the DOJ of privileged documents did not waive its privilege with respect to those documents. (ECF No. 165 at 2.)

When objections are filed to a report and recommendation of a special master, the district court makes a de novo determination of the findings of fact and conclusions of law in the report to which objections are made. FED. R. CIV. P. 53(f)(3) and (4). The court may accept, reject or modify in whole or in part the special master's findings or recommendations. FED. R. CIV. P 53(f)(1). Cole's Wexford objects to report and recommendation no. 2 because:

(1) "The record demonstrates that UPMC *did not* take reasonable measures to protect its privilege, because it had actual notice that it had made numerous inadvertent disclosures but took no remedial measures to assess the problem, thus failing the second prong of FRE 502(b);"

---

[3] Cole's Wexford—as the party claiming waiver—has the burden of proof as to waiver. Rhoads Indus. v. Bldg. Materials Corp., 254 F.R.D. 216, 223 (E.D. Pa. 2008).

[4] Cole's Wexford does not dispute that the documents being withheld by UPMC are privileged based upon the attorney-client privilege.

[5] UPMC and Cole's Wexford agree that the special master applied the correct legal standard to resolve Cole's Wexford's motion to dismiss. (ECF No. 165 at 3-4 (citing Rhoads v. Young Women's Christian Ass'n of Greater PGH., Civ. Action No. 09-261, 2009 WL 3319820, at *2 (W.D. Pa. Oct. 14, 2009).)

(2) "UPMC failed to correct its disclosures for approximately five years and there is no reason that the relevant time period should be reduced or qualified for purposes of this analysis;" and

(3) "The withheld documents are highly relevant and allowing UPMC to claim privilege over these documents severely prejudices Plaintiffs."

(ECF No. 260 at 9.) UPMC filed a response in opposition to Cole's Wexford's objections, in which it argues the special master correctly determined that under the applicable law, its inadvertent disclosure to the DOJ of documents subject to the attorney-client privilege did not effectively waive its attorney-client privilege with respect to those documents. (ECF No. 264 at 6.)

Cole's Wexford's arguments are not persuasive. The special master thoroughly analyzed whether UPMC took reasonable steps to prevent the disclosure of its privileged documents under Rule 502(b), the applicable advisory committee notes to Rule 502(b), and the relevant case law. (ECF No. 165 at 6-8 (citing D'Onofrio v. Borough of Seaside Park, Civ. Action No. 09-6220, 2012 WL 1949854, at *10-12 (D.N.J. May 30, 2012); United States v. Sensient Colors, Inc., Civ. Action No. 07-1275, 2009 WL 2905474, at *4 (D.N.J. Sept. 9, 2009); Rhoads Indus. v. Bldg. Materials Corp. of Am., 254 F.R.D. 216, 224 (E.D. Pa. 2008).) The special master determined that in light of the complex review process utilized by UPMC at the time of the production to the DOJ, its steps were reasonable and not indicative of waiver of any privilege in this case. The special master explained:

> In the instant case, Venable [UPMC's counsel with respect to the DOJ investigation] conducted a multi-stage review, including "a keyword search consisting of UPMC in-house and outside attorney names to the full text of documents," "an initial responsiveness and privilege review by attorney reviewers," "a subsequent privilege review by a separate team of attorney reviewers," "a privilege quality control ("QC") review by a separate team of attorney reviewers," "a privilege log review" and "additional random samplings of documents marked responsive and non-responsive … to ensure accuracy and consistency." (UPMC Opp. Exh. 1 at ¶¶ 5-6). This review process "involved dozens of attorneys and thousands of hours of

> attorney review time." (Id. at ¶ 8). The measures undertaken by Venable here are far more similar to those depicted in D'Onofrio and Sensient than the ones at issue in Rhoads Industries.

(ECF No. 165 at 7.) The court agrees with the special master's analysis. The steps initially taken by UPMC to protect its privileged documents, including the implementation of a complex review process, were reasonable and are not a basis to conclude its inadvertent disclosure of the 892 documents waived its right to claim privilege to them in this case.

The special master analyzed whether UPMC "promptly took reasonable steps to rectify the erroneous disclosure." (ECF No. 165 at 10.) When UPMC's initial counsel first learned about the inadvertent disclosures in 2007 and 2008, it requested the DOJ to return the privileged material and the DOJ complied with that request. (ECF No. 264-1 ¶ 15.) UPMC's reaction to the initial discovery of the inadvertent disclosures was prompt and reasonable. UPMC implemented a complex review process in 2007 to protect its privileged documents, it was aware of only a small percentage, i.e., .05%, of privileged documents that were inadvertently disclosed to the DOJ, and the DOJ returned the privileged documents to UPMC. (Id.) Under those circumstances, UPMC's decision to not conduct another review of the production in 2007 or 2008 was reasonable.

In 2009, the West Penn Allegheny Health System filed an antitrust case against UPMC. (ECF No. 264-7 ¶ 2.) For the next three years, UPMC's second counsel had no reason to review discovery to learn about further inadvertent disclosures because discovery in the antitrust case was not occurring during those three years and the parties were litigating dispositive motions. (Id. ¶ 4.) Under those circumstances, the court cannot conclude that UPMC's conduct was unreasonable.

On July 13, 2012, UPMC's current (and third) counsel learned about the additional disclosure of privileged documents to the DOJ. (ECF No. 264-1 ¶ 15.) UPMC then conducted a second complete review of the DOJ production for privileged materials. On July 23, 2012, ten days after first learning about the additional disclosure of privileged

4

materials, UPMC requested the DOJ to return its privileged documents. (ECF No. 264-8 at 2.) The DOJ responded that the privileged documents were sequestered and would be destroyed if the databases in which they were included were restored. (ECF No. 264-14 at 2.)

The special master determined that a lapse of ten days was not sufficient to warrant a finding of waiver of the attorney-client privilege. The court agrees. As explained by the special master, UPMC's conduct with respect to the disclosure of privileged documents to the DOJ is not indicative of a waiver of the attorney-client privilege. This factor—which was considered and analyzed by the special master—weighs in favor of UPMC.[6]

Contrary to Cole's Wexford's arguments, the special master considered the probative value of the documents and the prejudice to Cole's Wexford allegedly caused by permitting UPMC to maintain the privileged nature of its documents that were inadvertently produced to the DOJ. (ECF No. 165 at 13.) Cole's Wexford argues, however, that the special master erred because the privileged and redacted documents are relevant to the claims and defenses in this case. Cole's Wexford asserts there is information in the redacted documents about UPMC's efforts to recruit physicians from West Penn Allegheny Health System and defendant Highmark, Inc's competition in the insurer market. (ECF No. 250 at 14-15.) Cole's Wexford's arguments about the relevancy of the documents are not a basis upon which to find UPMC's inadvertent disclosure of documents protected by the attorney-client privilege waived its right to claim that privilege. Cole's Wexford never received unredacted copies of the privileged documents, and its case is not based upon those documents. Its argument about the probative value of those documents is, therefore, speculative and to permit UPMC to maintain its privilege would not be unfair to Cole's Wexford; indeed, Cole's Wexford has no right to UPMC's privileged documentation. Rhoads, 254 F.R.D. at 227. Privilege is not waived because the

---

[6] "[N]o matter what methods an attorney employed, an after-the-fact critique can always conclude that a better job could have been done." Rhoads, 254 F.R.D. at 226.

privileged information is probative to a party's case. In other words, "the fact that inadvertently produced documents are relevant, or even helpful to the receiving party, is not dispositive." U.S. Ex rel. Bagley v. TRW, Inc., 204 F.R.D. 170, 183 (C.D. Ca. 2001) (citing Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co., 133 F.R.D. 171, 174 (D.Kan. 1989)). "The prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." Bank Brussels Lambert v. Credit Lyonnais S.A., 160 F.R.D. 437, 446 (S.D. N.Y. 1995). Because Cole's Wexford never received, reviewed, or explicitly relied upon in this case the privileged documents produced to the DOJ, the special master was correct in concluding that the interests of justice would not be served by holding UPMC waived its right to claim privilege to those documents.

As the special master recognized: the "loss of the attorney-client privilege in a high-stakes, hard-fought litigation is a severe sanction and can lead to serious prejudice." Rhoads, 254 F.R.D. at 227. On balance, each of the factors appropriately considered in this case by the special master weighs in favor of UPMC maintaining its attorney-client privilege with respect to the documents inadvertently disclosed to the DOJ. Complex procedures were used by UPMC to protect that information, and the small percentage of documents that were disclosed to the DOJ, i.e., .81%, is indicative of the reasonableness of those procedures. Under those circumstances, and for the reasons stated herein, the court will adopt the report and recommendation no. 2 (ECF No. 165) of the special master in full. Cole's Wexford's motion to compel will be denied.

An appropriate order will be entered.

By the court,

Dated: February 8, 2016    /s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge