## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **COLE'S WEXFORD HOTEL, INC.,** | ) | |
| on its own behalf and on behalf of all | ) | |
| others similarly situated, | ) | Case No. 2:10-cv-01609-JFC |
| | ) | |
| Plaintiffs, | ) | Chief Judge Joy Flowers Conti |
| | ) | |
| v. | ) | |
| | ) | |
| **UPMC** and | ) | |
| **HIGHMARK, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE PAYMENT TO CLASS REPRESENTATIVE</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    SETTLEMENT COUNSEL SHOULD BE AWARDED THE REQUESTED FEES AND
       REIMBURSEMENT OF LITIGATION EXPENSES ....................................... 3

       1.    A Percentage of Fund Fee Award is Well Accepted in the Third Circuit ............. 3

       2.    The Requested Fee Award is Fair and Reasonable under Gunter ......................... 4

             a.    Size of the Fund Created and Number of Beneficiaries ............................ 5

             b.    The Presence or Absence of Substantial Objections.................................. 6

             c.    Skill and Efficiency of the Attorneys Involved ......................................... 6

             d.    The Complexity and Duration of the Litigation ....................................... 7

             e.    The Risk of Nonpayment ........................................................................ 7

             f.    The Amount of Time Devoted to the Case by Plaintiffs' Counsel ............. 8

             g.    The Awards in Similar Cases................................................................... 9

             h.    Benefits Accruing to Class Members Attributable to the Efforts of Class
                   Counsel ................................................................................................ 10

             i.    The Percentage Fee That Would Have Been Negotiated Had The Case
                   Been Subject to a Private Contingent Fee Agreement............................. 11

             j.    Any "Innovative" Terms of Settlement ................................................... 11

             k.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee.......... 12

       3.    The Court Should Reimburse the Incurred Expenses ........................................ 12

III.   THE COURT SHOULD AWARD THE REQUESTED SERVICE PAYMENT ........... 13

IV.    CONCLUSION................................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)................................................................................................. 3

*Boone v. City of Philadelphia*
    668 F. Supp. 2d 693 (E.D. Pa. 2009) ................................................................. 9, 13

*Cullen v. Whitman Medical Corp.,*
    197 F.R.D. 136 (E.D. Pa. 2000)...................................................................... 10, 13

*Deposit Guaranty Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)................................................................................................. 4

*Gunter v. Ridgewood Energy Corp.,*
    223 F.3d 190 (3d Cir. 2000)................................................................................ 4, 12

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
    263 F.R.D. 226 (E.D. Pa. 2009)........................................................................... 14

*In re AT&T Corp. Sec. Litig.,*
    455 F.3d 160 (3d Cir. 2006)........................................................................... 4, 5, 10

*In re Baby Foods Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013)................................................................................. 12

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2005)..................................................................... 4, 6, 12, 13

*In re Elec. Carbon Prods. Antitrust Litig.,*
    447 F. Supp. 2d 389 (D.N.J. 2006) .................................................................. 3, 9, 10

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D.Pa. 2000)........................................................................... 6

*In re Motorsports Merchandise Antitrust Litig.,*
    112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............................................................... 7

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
    2000 U.S. Dist. LEXIS 15980 (E.D. Pa. Oct. 23, 2000)........................................ 11

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998)................................................................................. 5

*In re Ravisent Techs., Inc. Sec. Litig.,*
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................................... 10

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) ................................................................. 12, 13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).............................................................................. passim

*In re Schering-Plough Corp,*
    2013 U.S. Dist. LEXIS 147981 (D.N.J. August 28, 2013).................................................... 8

*In re Vitamins Antitrust Litigation,*
    2001 WL 34312839 (D.D.C. July 16, 2001)............................................................................ 9

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) ..................................................................................... 14

*McDonough v. Toys "R" Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa 2015) ..................................................................................... 11

*Nichols v. Smithkline Beecham Corp.,*
    2005 U.S. Dist. LEXIS 7061 (E.D. Pa. April 22, 2005)........................................................ 8

*Rawlings v. Prudential-Bache Properties, Inc.,*
    9 F.3d 513 (6th Cir. 1993) ................................................................................................. 4

*Varcallo v. Massachusetts Mut. Life Ins. Co.,*
    226 F.R.D. 207 (D.N.J. 2005)............................................................................................. 9

## Other Authorities

*Manual for Complex Litigation 4th*
    § 14.121 (2004)................................................................................................................. 10

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff, through its counsel, Del Sole Cavanaugh Stroyd LLC, Scott M. Hare, Stone Law Firm LLC, Stone & Magnanini LLP, and Boies, Schiller & Flexner LLP ("Settlement Class Counsel"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees and for reimbursement of expenses, and for service payment to Class Representative.

## I.   <u>INTRODUCTION</u>

Plaintiff represents a putative class of persons that purchased small group health insurance policies in Western Pennsylvania from HHIC between July 1, 2010 and March 21, 2012. As set forth in greater detail in the Third Amended Complaint (Dkt. 286), Plaintiff alleges that UPMC and Highmark conspired to reduce competition in their respective markets, and that Highmark engaged in coercive and improper efforts to monopolize the market for health insurance in Western Pennsylvania. Plaintiff alleges that, as result, class members overpaid for health insurance purchased from HHIC. *Id.*

The initial complaint in this action was filed over five years ago, in 2010. (Dkt. 1). UPMC and Highmark have vigorously defended this case, resulting in multiple rounds of motion to dismiss briefing and rulings by this Court. (*E.g.* Dkts. 77, 80, 240, 241, 253, 254, 284, 285, 301, and 302). Despite UPMC and Highmark's zealous advocacy, this Court permitted Plaintiff's claims as articulated in the Third Amended Complaint and this Court's September 2015 Opinion (Dkt. 301) to go forward, with Phase I discovery opening on February 11, 2016.

Plaintiff's success in advancing this case beyond the motion to dismiss stage and securing a settlement with UPMC is the product of the initiative and hard work of skilled counsel over the course of several years. Plaintiff's settlement with UPMC ("UPMC Settlement") provides significant benefits to members of the proposed Settlement Class (Dkts. 346-1, 367-4, and 378-

1).  UPMC has agreed to pay $12.5 million ("UPMC Settlement Fund") (Dkt. 346-1 at 18 ¶ 59(a)(i)) as well as all reasonable notice and settlement administration expenses (*Id.* at ¶¶ 33, 60).  Moreover, UPMC has agreed to provide cooperation to Plaintiff (*id.* at ¶ 59(b)), which will enhance Plaintiff's ability to successfully prosecute its claims against Highmark. Plaintiff has moved for final certification of the settlement class and jointly moved for final approval of the settlement agreement with UPMC concurrently with this Motion.

Pursuant to this Court's order of April 6, 2016 (Dkt. 374), potential Settlement Class members were directly mailed Court-approved notices on April 20, 2016, and the Court-approved publication notice was also published in various publications in Western Pennsylvania. (Dkt. 346-5 at 9; Dkt. 378-4). The notices expressly notified potential Settlement Class Members that Settlement Counsel could seek up to 30% of the settlement fund in fees and expenses, as well as a $7,500 service payment for the Class representative. (Dkts.378-2; 378-3; 378-4).  To date, not a single member of the proposed Settlement Class has objected to the UPMC Settlement, regarding either the substantive settlement details or the fee and expense notification provisions.  Declaration of Andrew Stone ("Stone Declaration") ¶5.

As set forth in the attached declaration of Andrew Stone, Settlement Counsel has expended a significant amount of time and effort pursing Plaintiff's claims against UPMC and Highmark. This Declaration is an integral part of this submission, and Plaintiff respectfully refers the Court to it (as well as Patrick Cavanaugh's declaration, Dkt. 346-4)) for a description of Plaintiff's vigorous and diligent prosecution of this case.

In light of the substantial benefits that Settlement Counsel conferred on members of the proposed Settlement Class through their hard work, Plaintiff and Settlement Class Counsel respectfully request an award of 30% of the UPMC Settlement Fund for fees and expenses,

which is $3,750,000.  A lodestar cross-check demonstrates that the total requested payment is *less* than the $4,063,650.52 in fees and expenses ($3,778,621.40 and $285,029.11, respectively) incurred through April 6, 2016. Stone Declaration ¶ 5 and Exhibits A and B. The total amount proposed to be paid to Settlement Counsel is well within the parameters established by courts in this Circuit.

## II.   SETTLEMENT COUNSEL SHOULD BE AWARDED THE REQUESTED FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Settlement Class Counsel to date have not received any fees for their work, while they have at the same time incurred significant out-of-pocket expenses.  Settlement Class Counsel therefore request the Court award to Settlement Counsel 30% of the Settlement Fund for fees and expenses, which is $3,750,000. This requested award is inclusive of fees and costs, which means that the portion attributed to *fees* actually equals 28% of the fund[1].  Moreover, the requested award, in its entirety, is less than the $3,778,621.40 in fees alone that Settlement Counsel incurred through April 6, 2016.  Stone Declaration ¶5.

### 1.   A Percentage of Fund Fee Award is Well Accepted in the Third Circuit

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to a reasonable attorneys' fee from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The rationale for such awards is that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." *Id*. at 478. Courts have also recognized that not only do attorneys' fee awards from a common fund provide just compensation, they also encourage skilled counsel to represent those seeking redress for damages inflicted on an entire classes of persons, and to discourage future misconduct of a similar nature. *See, e.g., In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 405 (D.N.J. 2006) (noting that the common

---

[1]  In other words, $285,029.11 of the requested $3,750,000 will be applied to costs, not fees, thus reducing the amount requested in fees to slightly under 28% of the Settlement Fund. Should the Court award the requested 30%, Plaintiff's counsel would recover $3,464,970.89 in fees.

3

fund doctrine "fosters class actions and encourages skilled counsel to represent class action plaintiffs"), *citing Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).

The Third Circuit has established a preference for measuring the award of attorneys' fees in common fund cases as a percentage of the fund—such an approach "allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."  *In re AT&T Corp. Sec. Litig*., 455 F.3d 160, 164 (3d Cir. 2006) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (internal quotation marks omitted)); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005) (noting that the percentage-of-recovery approach dominates common fund cases).  Courts adopt the percentage-of-fund approach in contrast to the lodestar approach. The lodestar approach is cumbersome and often wasteful of the Court's resources, and disincentivizes counsel from achieving early results for the class. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources.").

### 2.  The Requested Fee Award is Fair and Reasonable under Gunter

This Court has considerable discretion in setting percentage-based fee awards in common fund cases. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000).  In several decisions, the Third Circuit has identified factors the Court should consider when analyzing a potential fee award: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the

efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (10) any "innovative" terms of settlement. *Id.* at 195 n.1; *In re AT&T Corp.*, 455 F.3d 160, 165-66 (3d Cir. 2006) (*citing In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998)).  There is substantial overlap between the first five factors above and the *Girsh* factors (*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)) governing final approval of the settlement agreement, which are outlined in the concurrently filed Motion for Final Approval of the Settlement Agreement ("Final Approval Motion").  These abovementioned factors are not exhaustive—the Court should also consider "any other factors that are useful and relevant with respect to the particular facts of the case." *In re AT&T Corp.*, 455 F.3d at 166.  "What is important is that in all cases, the district court 'engage in robust assessments of the fee award reasonableness factors." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 302 (3d Cir. 2005), *as amended* (Feb. 25, 2005).

### a.  Size of the Fund Created and Number of Beneficiaries

This factor is discussed in the Final Approval Motion, filed this same day.  The Settlement Class contains approximately 10,600 members that are eligible to participate in the recovery provided they complete the required claim form.  Assuming a 10% percent overcharge in Class Members' premiums, the recovery of $12,500,000 (Dkt. 346-1 at 18 ¶ 59(a)(i)), represents 12.5% of potential damages, which Plaintiff's Counsel proposes to be distributed on a pro rata basis among class members.  (Dkt. 367-8).  Assuming a 20% overcharge in Class Members' premiums, the recovery represents 6.3% of damages.  Considering that this is an icebreaker settlement and Plaintiff is continuing to litigate its claims against Highmark, this is an excellent result for the Class—as cited in the Final Approval Motion, courts regularly approve similar and smaller recoveries. *See also* (Dkt. 381-1 at 20-21).  Moreover, UPMC has paid all

notice and claim administration costs—which is an estimated benefit of $200,000 to the class. (Dkt. 346-1 at ¶ 33, 60).  Furthermore, UPMC has agreed to provide cooperation to Plaintiff in prosecuting claims against Highmark, and will forego Rule 45 discovery costs—both of which are valuable benefits to the Settlement Class.  (*id.* at ¶ 59(b)).

### b.   The Presence or Absence of Substantial Objections

As of the filing of this memorandum, there have been no objections to the settlement or to the proposed fee award.  The absence of objections supports the requested award.[2] *In re Cendant Corp., Derivative Action Litigation,* 232 F.Supp.2d 327, 337 (D.N.J. 2002) (determining this factor weighed in favor of approving fees where only six of the 200,000 shareholders raised complaints about the requested fees); *see also In re Rite Aid*, 396 F.3d at 305 ("District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request").

### c.   Skill and Efficiency of the Attorneys Involved

The Court must evaluate the skill and efficiency of class counsel, which is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D.Pa. 2000). As set forth in the declarations of Settlement Class counsel previously submitted to this Court (Dkt. 344-6), the Settlement Class is represented by counsel with extensive experience with complex civil and class action litigation.  Settlement Class counsel has litigated this case for the past five years against similarly skilled and savvy counsel representing UPMC, who would have continued to be

---

[2] Should Settlement Class Counsel become aware of any objections, Settlement Class Counsel will, of course, provide them to the Court.

6

formidable adversaries.  Although this case has been pending for several years, Settlement Class Counsel were able to obtain this settlement quickly after the Court denied motions to dismiss and issued a schedule for phased discovery, thereby avoiding incurring costs, on behalf of the Class, of litigating against UPMC. Stone Declaration  ¶¶ 39-49.

Moreover, with respect to this factor, the Court should consider the result obtained.  *In re Rite Aid*, 396 F.3d at 304 (determining that counsel was "extraordinarily deft and efficient in handling this most complex matter" because, among other things, counsel negotiated a particularly favorable non-cash settlement). An excellent result has been achieved for the class in the present case, and this factor weighs in favor of the fee request.

### d.   The Complexity and Duration of the Litigation

This factor is also examined in great depth in the concurrently filed Motion for Final Approval, and was also discussed in the previously filed Motion for Preliminary Approval (Dkt. 381-1). In short, the claims in this case involve complex issues of antitrust law, such as the filed rate doctrine, which have necessitated multiple rounds of motion to dismiss briefing.  Stone Decl. ¶¶ 21-28; *see also In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) ("An antitrust class action is arguably the most complex action to prosecute."). For the reasons set forth in the Motion for Final Approval, this factor weighs significantly in favor of the requested fee and expense award.

### e.   The Risk of Nonpayment

This factor accounts for the risk that Settlement Class counsel assumes that the litigation will yield little or no recovery, and is a critical factor in determining an appropriate fee award.  In *In re Schering-Plough Corp.*, the Court approved a requested fee award and noted that counsel there "undertook this Action on a purely contingent fee basis, assuming an enormous risk that the litigation would yield potentially little, or no, recovery and leave them uncompensated for their

significant investment of time and very substantial expenses. Courts have consistently recognized that this risk is an important factor favoring an award of attorneys' fees." 2013 U.S. Dist. LEXIS 147981, at *79-80 (D.N.J. August 28, 2013) (citation omitted). Likewise, Settlement Class Counsel here represented the Settlement Class on a contingent basis, with no reimbursement of any fees or expenses. *See also In re Fasteners Antitrust Litig.*, 2014 U.S. Dist. LEXIS 9990, at *15 (E.D. Pa. January 27, 2014) (noting that "Plaintiffs' Counsel undertook this case on a purely contingent fee basis, and that this poses a significant risk of not being paid or reimbursed for the costs of litigating the case").

Likewise, in *Nichols v Smithkline Beecham Corp.*, the Court recognized that the risk of nonpayment was high where the class counsel litigated "enormously complex legal and factual issues" for over four years in the face of strong defenses. 2005 U.S. Dist. LEXIS 7061 at *72 (E.D. Pa. April 22, 2005). Similarly, this case is ripe with complex legal and factual issues that have necessitated multiple rulings on motions to dismiss by this Court. (*E.g.* Dkts. 77, 80, 240, 241, 253, 254, 284, 285, 301, and 302). These Court rulings demonstrate the extensive risks that Settlement Class counsel assumed in bringing this litigation. Despite these adverse rulings, Settlement Class Counsel continued to diligently prosecute this case despite facing the very real risk that they would not be compensated for their work, or that they would not be compensated for the expenses that they incurred during the course of prosecuting this case.

### f.  The Amount of Time Devoted to the Case by Plaintiffs' Counsel

This case has been pending for over five years, and over that period has required substantial investment of time by Plaintiffs' counsel to successfully move this complex antitrust case past the initial motion to dismiss stage, investigate the underlying facts, and begin expert discovery. Collectively, Plaintiffs' counsel have logged thousands of hours on this case, and accumulated a lodestar of $3,778,621.40. Stone Decl. ¶5. As one Court in this Circuit noted,

"over the course of years, it is reasonable that so much time would have been spent on these complex cases, particularly given the excellent counsel of Defendants and their contested nature." *Varcallo v. Massachusetts Mut. Life Ins. Co.,* 226 F.R.D. 207, 253 (D.N.J. 2005). Furthermore, "[t]hat the requested percentage-of-recovery award is roughly equivalent to the lodestar amount further attests to the reasonableness of the requested fees." *In re Elec. Carbon Products Antitrust Litig.*, 447 F. Supp. 2d 389, 407 (D.N.J. 2006). This factor weighs in favor of the requested award.

### g.   The Awards in Similar Cases

The total award requested here, 30% for fees and expenses, is equivalent to, or lower, than many other antitrust cases, where Courts have awarded 30% or more for fees alone. *E.g. In re Elec. Carbon Products Antitrust Liti*g, 447 F. Supp. 2d 389, 408 (D.N.J. 2006) (cataloguing numerous antitrust cases within the Third Circuit and elsewhere awarding fees of 30%-34%; *see also In re Vitamins Antitrust Litigation,* 2001 WL 34312839 *10 (D.D.C. July 16, 2001) (approving award of 34 percent of settlement fund as fees alone, before expenses, and noting that "while fee awards in common fund cases range from fifteen to forty-five percent, the normal range of fee recovery in antitrust suits is twenty to thirty percent of the common fund").

As the Court in *Boone v. City of Philadelphia,* noted "the percentage of 30% requested by class counsel is within the range the percentages granted in similar cases and class action settlements generally." 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009). The *Boone* court then went on to state "[a] study referenced by another court in this district analyzed 289 class action settlements ranging from under $1 million to $50 million and determined that the average attorney's fees percentage to be 31.7% and the median to be one-third." *Id.* citing *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001). Likewise, in *In re Ravisent Techs., Inc. Sec. Litig.*, the Court noted that "courts within this Circuit have typically awarded attorneys'

fees of 30% to 35% of the recovery, plus expenses." No. 00-1014, 2005 WL 906361, at *10-11 (E.D. Pa. Apr. 18, 2005); *see also Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (noting that an "award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *Manual for Complex Litigation 4*[th] § 14.121 at 188 (2004) (noting that the range of attorneys' fees awarded from a common fund is "often between 25% and 30% of the fund"). Here, Plaintiff is requesting a *combined* 30% award for expenses and fees. Assuming that the Court finds it is appropriate to reimburse Settlement Class Counsel for all expenses incurred to date, this means that Settlement Class counsel are *de facto* seeking a fee award of 28%. This is well within the range of reasonableness.

### h. Benefits Accruing to Class Members Attributable to the Efforts of Class Counsel

The Third Circuit has suggested that, in evaluating a fee request, it "may be relevant and important to consider" whether the benefits of the Settlement were attributable to the efforts of others, such as government investigators, rather than class counsel. *In re AT&T*, 455 F.3d at 165. Here, the Settlement is directly attributable to the efforts of Settlement Class Counsel. Although there was an investigation by the Department of Justice into Highmark and UPMC, the Department of Justice did not pursue any litigation. Therefore, the only benefit deriving from that investigation is the fact that Settlement Class Counsel was able to access discovery generated as part of that investigation. Accordingly, Settlement Class counsel has had to develop, on its own, its theories and approaches in this litigation, and build its own evidentiary record to support its claims. *In re Elec. Carbon Products Antitrust Litig.*, 447 F. Supp. 2d at 409 (finding that, even where there had been a related government prosecution, "counsel were largely on their own to develop a theory of the case, explore its full contours, obtain discovery, and develop plausible theories of liability and of damages that could be monetizable into a

settlement"). Likewise, Settlement Class counsel has had to navigate the complexities presented as a result of the filed rate doctrine and Defendants' efforts to preemptively prevent class certification, issues that the Department of Justice did not confront.

### i. The Percentage Fee That Would Have Been Negotiated Had The Case Been Subject to a Private Contingent Fee Agreement

Courts should not give "great weight" to this factor because it is a "hypothetical exercise." *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 655 (E.D. Pa 2015). Nonetheless, the percentage fee requested by Class Counsel is consistent with the fee that would have been negotiated had this case been subject to a private contingent fee arrangement. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class commercial litigation." *Remeron*, 2005 U.S. Dist. LEXIS 27013, at *46. *See also In re Orthopedic Bone Screw Prods. Liab. Litig*., No. 97-381, 2000 U.S. Dist. LEXIS 15980, at *29 (E.D. Pa. Oct. 23, 2000) (noting that "plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery"). Accordingly, this factor supports Class Counsel's fee request.

### j. Any "Innovative" Terms of Settlement

Settlement Class Counsel secured several non-monetary terms that are of great and continuing benefit to the class. The Settlement includes a most favored nations clause that provides that, except in certain limited circumstances, Settlement Class Counsel cannot settle with the remaining defendant, Highmark, for less than $12.5 million.  This clause helps strengthen the Settlement Class's negotiating posture with Highmark.  The Settlement also provides that UPMC will reasonably cooperate with Plaintiff in discovery and not seek Rule 45 costs.   Moreover, UPMC has agreed to pay all reasonable costs of notice and claim administration, which is estimated to exceed $200,000.  This is a significant benefit to the Class,

as it ensures that Class Members will be able to receive the maximum possible benefit from the $12.5 million that UPMC paid to settle this litigation.

### k.  A Lodestar Cross-Check Confirms the Reasonableness of the Fee

The Third Circuit has suggested that district courts cross-check the percentage award against the "lodestar" -- which is determined by multiplying the number of hours reasonably worked on the case by a reasonable hourly rate for such services -- to help ensure the reasonableness of the fee. *See, e.g., In re Baby Foods Antitrust Litig.,* 708 F.3d 163, 176 (3d Cir. 2013); *Gunter*, 223 F. 3d at 195 n.1 ("[W]e have also suggested that district courts crosscheck the percentage award at which they arrive against the "lodestar" method…"). In calculating the lodestar for cross-check purposes, the court need not scrutinize the documented hours.  "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). Here, a lodestar cross check demonstrates that the requested fee award is actually *lower* than the lodestar.

### 3.  The Court Should Reimburse the Incurred Expenses

In common fund cases, attorneys are entitled to be reimbursed for expenses reasonably incurred as part of the litigation. *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 at *48-49 (D.N.J. 2005) ("Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.") (citing *In re Cendant Corp.,* 232 F. Supp. 2d 327, 343 (D.N.J. 2002) (internal citation omitted)).

Settlement Class Counsel's expenses were reasonably incurred and necessary. These expenses include fees paid for expert work, which was conducted in advance of the mediation at

which UPMC and Plaintiff reached the settlement here.  These expenses also include expert work related to ongoing discovery and class certification analysis.  These expenses also include costs for creating and maintaining an electronic document database that hosts the productions of Highmark and UPMC; the cost of the mediation at which the UPMC settlement was reached; legal research costs; travel fees; and other miscellaneous expenses. Stone Decl. ¶¶ 5.   The Court should approve reimbursement of Settlement Class Counsel's expenses in full.  *See In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 at *549-50 (recognizing as reasonable similar expenses); *In re Cendant Corp.*, 232 F. Supp. 3d at 343-44 (same).

## III.   THE COURT SHOULD AWARD THE REQUESTED SERVICE PAYMENT

Settlement Class Counsel requests that the Court approve an incentive award in the amount of $7,500.00 for the Class Representative, Cole's Wexford Hotel, Inc., to recognize its extensive participation in this litigation.  Incentive awards are "not uncommon in class action litigation" and one Court in the Eastern District of Pennsylvania stated that "Judges of this district have not hesitated to assure that those undertaking class litigation are not penalized for placing a class's interest above their own." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (granting incentive awards equivalent to tuition paid by named plaintiffs).

Plaintiff actively pursued the Settlement Class's interests by joining this suit as a Class Representative and undertaking the responsibilities attendant upon it as a representative plaintiff, including responding to discovery requests, keeping apprised of the progress of the case, and participating in mediation and settlement efforts.  Numerous courts have awarded named class plaintiffs for the benefits they have conferred on the class, and the amount requested here is in line with or lower than payments approved in other cases. *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 715 (E.D. Pa. Nov. 3, 2009) (court approved $15,000 awards for each class

representative); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 480 (D.N.J. 2008) (collecting numerous cases identifying incentive awards of over $50,000 per plaintiff); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,* 263 F.R.D. 226, 245 (E.D. Pa. 2009) (approving incentive awards *per plaintiff* of between $7,500 and $10,500 to representative plaintiffs due to "the sacrifice of their anonymity. The named plaintiffs prepared for and testified in depositions that exposed their private financial affairs, they participated in preparing responses to interrogatories, and they produced an extensive amount of documents").

This request for one incentive payment of $7,500 is consistent with, and well below, the amount of incentive payments granted in other class action cases and is reasonable.

## IV.  <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court award the requested fees and expenses, and service payment to the Class Representative.

Dated: May 6, 2016

/s/ Patrick C. Cavanaugh
Arthur H. Stroyd, Jr. (Pa. No. 15910)
Steven J. Del Sole (Pa. No. 73460)
Patrick K. Cavanaugh (Pa. No. 72960)
DEL SOLE CAVANAUGH STROYD
LLC
3 PPG Place, Suite 600
Pittsburgh, PA 15222
Tel: 412-261-2393
Fax: 412-261-2110
astroyd@dscslaw.com
sdelsole@dscslaw.com
pcavanaugh@dsclaw.com

Andrew M. Stone (Pa. No. 35176)
STONE LAW FIRM, LLC
The Frick Building, Suite 1806
437 Grant Street
Pittsburgh, PA 15219
Tel: 412-391-2005
Fax: 412-391-0853
astone@stone-law-firm.com

Scott M. Hare (Pa. No. 63818)
The Frick Building, Suite 1806
437 Grant Street
Pittsburgh, PA 15219
Tel: 412-338-8632
Fax: 412-338-6611
scott@scottlawpgh.com

Respectfully Submitted,

/s/Hamish Hume
Hamish Hume (*pro hac vice*)
Melissa Felder Zappala (*pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: 202-237-2727
Fax: 202-237-6131
hhume@bsfllp.com
mzappala@bsfllp.com

David Stone (*pro hac vice*)
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: 973-218-1111
Fax: 973-218-1106
dstone@stonemagnalaw.com

15

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that, on May 6, 2016, a true and correct copy of the foregoing was served on all counsel of record by the Court's electronic filing system (CM/ECF).

<u>/s/ Hamish Hume</u>
Hamish Hume

16