IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLE'S WEXFORD HOTEL, INC., on its own behalf and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>UPMC and HIGHMARK INC.,<br><br>Defendants. | Civil Action No. 10-1609 |

# MEMORANDUM OPINION

**CONTI, Chief District Judge.**

Pending before the court is a motion for reconsideration filed by plaintiff Cole's Wexford Hotel, Inc. ("plaintiff" or "Cole's Wexford"). (ECF No. 441.) On October 26, 2016, defendant Highmark Inc. ("defendant" or "Highmark") filed a response to defendant's motion for reconsideration. (ECF No. 444.) As set forth below, the court finds that plaintiff did not meet the standards for granting a motion for reconsideration.

**I. Background**

On September 20, 2016, this court issued an opinion responding to objections made by both parties with respect to the special master's amended report and recommendation no. 4. (ECF No. 432.) In this opinion, the court, *inter alia*, denied plaintiff's request to discover the actual rates that Highmark charged from 1999 through 2001, and the base rates that the

Pennsylvania Insurance Department ("PID") approved for Highmark during this time period. The court denied this request for two reasons. First, the court found that the requested rates were not relevant because they could not be used for the purpose for which they were requested, namely to conduct a benchmark analysis, as described by plaintiff's expert Dr. Jeffrey Leitzinger ("Dr. Leitzinger"). Second, the court found that the requested rates were not relevant because the plaintiff did not demonstrate that this information could be used in a manner that would not violate the filed rate doctrine.

On October 18, 2016, Cole's Wexford filed a motion requesting that this court reconsider, or, in the alternative, clarify its decision and order with respect to the court's decision to deny plaintiff's request to discover Highmark's base rates and approved rates between 1999 and 2001. (ECF No. 441.) On October 26, 2016, Highmark filed a response to defendant's motion. (ECF No. 444.) The motion is now fully briefed and ripe for disposition.

**II. Legal Standards Applicable to Motions for Reconsideration**

The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence." Bootay v. KBR, Inc., 437 F.App'x 140, 146-47 (3d Cir. 2011) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). In order to be successful on a motion for reconsideration, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made. United States v. Jasin, 292 F.Supp.2d 670, 676 (E.D. Pa. 2003). There are three circumstances in which a court may grant a motion for reconsideration: (1) there has been an intervening change in the law; (2) new evidence is now available that was not available when the court entered judgment; or (3) there is a need to correct a clear error of law or fact, or to

prevent manifest injustice. Fed. R. Civ. P. 59(e); Allah v. Ricci, 532 F.App'x 48, 51 (3d Cir. 2013) (citing Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)); Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). By reason of the interest in finality, at least at the district court level, motions for reconsideration should be sparingly granted. *See* Rottmund v. Cont'l Assurance Co., 813 F.Supp. 1104, 1107 (E.D. Pa. 1992).

Motions for reconsideration are not designed to provide litigants with a "second bite at the apple." Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995). A motion for reconsideration is not to be used to relitigate, or "rehash," issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made. Williams v. City of Pittsburgh, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998); Reich v. Compton, 834 F.Supp. 753, 755 (E.D. Pa. 1993), *aff'd in part, rev'd in part*, 57 F.3d 270 (3d Cir. 1995); Keyes v. Nat'l R.R. Passenger Corp., 766 F.Supp. 277, 280 (E.D. Pa. 1991). A motion for reconsideration is not to be used as a way to advance additional arguments that the litigant could have made, but chose not to make, sooner, or as an opportunity for a litigant, having lost, to change theories of the case and advance new, often contradictory, evidence in support. Bell v. City of Phila., 275 F.App'x 157, 160 (3d Cir. 2008); Spence v. City of Phila., 147 F.App'x 289, 291-92 (3d Cir. 2005); Bhatnagar, 52 F.3d at 1231; Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3d Cir. 1987); Miller v. Court of Common Pleas of Erie Cnty., No. 12-206, 2014 WL 108585, at *2 (W.D. Pa. Jan. 10, 2014).

**III. Discussion**

Plaintiff requests that this court reconsider its prior determination that the regulated rates Highmark charged from 1999 to 2001, which plaintiff requested as part of discovery, were not relevant for the purpose of conducting a benchmark analysis as described by Dr. Leitzinger. Plaintiff argues that the court applied a restrictive interpretation of Dr. Leitzinger's explanation about how he would go about constructing a benchmark model, this interpretation was based on a clear error of fact, and allowing this interpretation to stand would be a manifest injustice. (ECF No. 441.) In particular, plaintiff takes issue with the court's understanding of Dr. Leitzinger's statement that "the primary focus in constructing the but for world, if possible, is to find a period in time during which the same market participants were competing in this same environment free of the effects of the specific anticompetitive behavior at issue." (ECF No. 408-2 at 32 ¶ 8.) Plaintiff claims that "[t]his Court appears to want to require perfect symmetry in the companies that participate in the market in the period at issue and in the benchmark period." (ECF No. 441 at 5.) Plaintiff argues that this understanding of Dr. Leitzinger's model is incorrect and that "it would be manifest injustice to allow this [the court's] analysis to become the law of the case." (Id. at 4.)

The court must deny plaintiff's motion for reconsideration on several grounds. First, the motion for reconsideration is unfounded because the court did not solely rest its decision on the reasoning with which the plaintiff takes issue. Plaintiff is under the impression that the court misinterpreted or did not fully understand how a benchmark model works and how the requested rates would be used in the construction of Dr. Leitzinger's model, and as a result the court was too restrictive in what it considered a viable and relevant benchmark period. While the court determined that the requested rates were irrelevant based on Dr. Leitzinger's own explanation of his methodology, the court alternatively rested its decision on the concern that any use of the

4

requested rates by plaintiffs would run afoul of the filed rate doctrine. Nowhere in its motion for reconsideration does plaintiff request that the court reconsider its findings with respect to the filed rate doctrine or contend that the court's determination that the use of the requested rates would violate the filed rate doctrine was a "manifest error of law or fact." Even if the court were to reconsider its decision and find that the requested rates do, in fact, provide a relevant benchmark under Dr. Leitzinger's methodology, the court would still deny plaintiff's discovery request on the ground that the information sought could not be used without violating the filed rate doctrine. Because plaintiff did not show that granting the motion to reconsider would in any way alter the court's ultimate decision, there is no basis to find that the court's prior decision constituted a clear error of law or fact that must be remedied to prevent a manifest injustice. The court, therefore, need not consider whether its reasoning with respect to Dr. Leitzinger's benchmark analysis constituted a clear error as alleged by plaintiff in the motion to reconsider. For the purpose of developing a full record, however, the court will explain why plaintiff's argument that the court applied an unreasonable interpretation of Dr. Leitzinger's methodology is likewise not an appropriate ground for granting plaintiff's motion for reconsideration.

Plaintiff argued that this court misconstrued Dr. Leitzinger's explanation of his benchmark economic model when it held that the requested rates were not relevant because "1999 through 2001 does not represent a period of time during which the *same market participants* that were competing in the *same market environment* free from the effects of anticompetitive behavior." (ECF No. 432 at 34) (emphasis in original). Plaintiff now argues that Dr. Leitzinger's model does not require the *same* participants or the *same* environment, but that it merely calls for "market participants and market environments that are as similar as possible to

those in the class period," (ECF No. 441 at 5) and that the court, in requiring that the same participants and same environment, held plaintiff to a rigid and unreasonable standard.

In choosing to emphasize the words "same market participants" and "same market environment" in its original opinion, this court did not impose its understanding of how the benchmark economic model works, but instead relied upon Dr. Leitzinger's own explanation. (ECF No. 408-2 at 32 ¶ 8.) Webster's Third New International Dictionary defines "same" as "resembling in every way : not different in relevant essentials at one time . . . being one without addition, change, or discontinuance : having one nature or individuality : of like nature or identity : *identical*." Webster's Third New International Dictionary 2007 (1993); United States v. Husmann, 765 F.3d 169, 173 (3d Cir. 2014) ("We look to dictionary definitions to determine the ordinary meaning of a word."). It is uncontested that between 1999 and 2001 Highmark did not have *identical* market participants to HHIC and did not compete in an *identical* market environment. While plaintiff may now wish to modify Dr. Leitzinger's testimony to describe his model as requiring similar market participants and a similar market environment, plaintiff's desire to present a new or "clearer" explanation of Dr. Leitzinger's methodology is not an appropriate basis for reconsideration; motions to reconsider are not to be used as a way to advance different or additional arguments that the litigant could have made, but chose not to make, sooner. Bell, 275 F.App'x at 160; Spence, 147 F.App'x at 291–92; Bhatnagar, 52 F.3d at 1231; Trenton, 832 F.2d 806 at 810 (3d Cir. 1987); Miller, 2014 WL 108585, at *2. Plaintiff's argument that this court should not have construed the word "same" to have its ordinary meaning, but should have assumed a less precise understanding of their expert's own words does not constitute a clear error of law or fact, and is, therefore, not an appropriate basis for granting a motion to reconsider.

Even if the court were to concede that Dr. Leitzinger implicitly meant "similar" where he used the word "same," plaintiff still did not provide the court with a basis to conclude that the regulated rates Highmark charged from 1999 to 2001 were similar to what HHIC would have charged Cole's Wexford during that time, but for the alleged UPMC-Highmark conspiracy. Between 1999 and 2001, HHIC was not participating in a regulated market. Conversely, during this time period, Highmark was a regulated entity participating in a regulated environment. Dr. Leitzinger's testimony does not adequately explain how a regulated entity competing in a regulated market is similar to how an unregulated entity would have competed in that regulated market. Without a basis to find that Highmark is a similar enough entity to provide a valid benchmark, the court is unable to conclude that the discovery requested is relevant.

Dr. Leitzinger speculates that there is a possibility that the requested rates could provide viable benchmark data. Dr. Leitzinger couches the usefulness of the requested rates with qualifications such as "*depending on* what the data actually show" and "data for the class period, *could potentially* be used to construct a viable economic damages model." (ECF No. 441-1 at 2 ¶ 3) (emphasis added). The speculative nature of Dr. Leitzinger's testimony is problematic. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"). Dr. Leitzinger based his belief that Highmark's rates could potentially provide a viable benchmark comparison, on his "understanding that Plaintiffs have alleged that Highmark and HHIC are closely related entities." (ECF No. 441-1 ¶ 4.) Where an expert has "merely accepted [a party's] testimony as true . . . without any scientific or technical basis to verify that conclusion, the District Court [is] well within its discretion to conclude that [the expert's] proposed testimony [is] merely an "unsupported speculation" or "subjective belief." Senese v.

7

Liberty Mut. Ins. Co., Civ. Action No. 14-3952, 2016 WL 5682553, at *3 (3d Cir. Oct. 3, 2016). Here, Dr. Leitzinger failed to illustrate how the requested rates are similar to the rates HHIC would have charged Cole's Wexford during the class period, and any contention of similarity, however vague, is based on Dr. Leitzinger's speculation and unsubstantiated assertions by plaintiff.

The court is not convinced that it made a clear error of law or fact in its original determination that HHIC's unregulated rates were not the same or, even considering Dr. Leitzinger's clarifications, similar enough to Highmark's regulated rates to provide a valid benchmark for Dr. Leitzinger's model. While plaintiff may disagree with this determination, mere disagreement with the court's decision is not an appropriate basis for a motion for reconsideration. Williams, 32 F.Supp.2d at 238; Reich, 834 F.Supp. at 755; Keyes, 766 F.Supp. at 280.

IV. Conclusion

District courts should sparingly grant motions for reconsideration. Rottmund, 813 F.Supp. at 1107. Here, plaintiff did not show that there was an intervening change in the law since this court issued its ruling; plaintiff did not provide previously unavailable evidence; and plaintiff did not show that there is a need to correct a clear error of law or fact, or to prevent a manifest injustice. Because plaintiff did not meet the standards for granting a motion for reconsideration, the motion will be denied.

An appropriate order will be entered.

Dated: February 1, 2017
/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge