IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLE'S WEXFORD HOTEL, INC., on its own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> HIGHMARK INC., <br><br> Defendant. | Civil Action No. 10-1609 |

**MEMORANDUM OPINION**

**CONTI, Senior District Judge**

## I. Introduction

In the third amended complaint, plaintiff Cole's Wexford Hotel, Inc. ("Cole's Wexford") asserts four claims against defendant Highmark Inc. ("Highmark") under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and § 4 of the Clayton Act, 15 U.S.C. § 15. (ECF No. 286.) Cole's Wexford alleges that Highmark, the largest health insurance provider in Western Pennsylvania, and former defendant, UPMC,[1] the largest healthcare provider in Western Pennsylvania, conspired to monopolize the healthcare and health insurance markets in Western Pennsylvania. Cole's Wexford alleges that as a result of the UPMC-Highmark

---

[1] UPMC was named as a defendant and co-conspirator of Highmark in the third amended complaint. On July 28, 2016, the court: granted the motion to certify the settlement class with respect to the claims against UPMC (ECF No. 413) filed by Cole's Wexford; granted the motion for final approval of that settlement (ECF No. 414); and issued a final judgment order with respect to UPMC on all claims against it for purposes of Federal Rule of Civil Procedure 58(a) (ECF No. 415). UPMC is, therefore, no longer a named defendant in this case.

conspiracy, Cole's Wexford from July 1, 2010, until March 21, 2012, was forced to pay Highmark Health Insurance Company, a for-profit subsidiary of Highmark, supracompetitive rates for health insurance.

Cole's Wexford filed a motion to certify class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). (ECF Nos. 525, 526.) The motion to certify class was briefed by the parties. Highmark in its response in opposition to the motion to certify class argued that Cole's Wexford did not: (1) "demonstrate that the class is ascertainable[;]" (2) "demonstrate that it has a reliable method to establish class-wide impact[, i.e., satisfy the predominance requirement of Rule 23(b)(3);]" or (3) set forth a theory of damages that satisfies Rule 23. (ECF No. 547 at 2-3.)

On September 19, 2018, the court held a hearing on the motion to certify class. Counsel made argument and Cole's Wexford's proffered economic expert, Robin Cantor, Ph.D. ("Dr. Cantor"), and Highmark's proffered economic expert, John Johnson, IV, Ph.D. ("Dr. Johnson"), participated in the presentation of concurrent expert evidence.[2] Dr. Cantor's expert report and testimony concerned, among other things, the methodology[3] that the proposed class would use to show antitrust impact and damages on a class-wide basis. Dr.

---

[2] This method of presenting expert evidence is also known as placing the experts in a "hot tub." In re Domestic Drywall Antitrust Litig., Civ. Action No. 15-1712, 2018 WL 2184391, at *2 (E.D. Pa. May 10, 2018) ("The Court had extensive hearings, including the testimony of the competing experts, and a so-called 'hot tub' where both experts sat in the jury box and were examined by counsel and the Court."); see Rovakat, LLC v. C.I.R., 102 T.C.M. (CCH) 264 (T.C. 2011), aff'd, 529 F. App'x 124 (3d Cir. 2013).

[3] It is the court's understanding that Dr. Cantor's methodology for proving antitrust impact and methodology for proving damages are essentially the same methodology. (Dr. Cantor's Expert Report at 10 ¶ D.) Thus, the court in this opinion refers to a "methodology" proposed by Dr. Cantor as opposed to "methodologies."

Johnson's expert report and testimony did not identify a particular alternative methodology; rather, his report and testimony challenged the reliability of the methodology proposed by Dr. Cantor. At the request of Highmark, the court continued the hearing until November 9, 2018, in order for Highmark to present the testimony of William Cashion ("Cashion"), Highmark's chief actuary. The court permitted Cole's Wexford to conduct a limited deposition of Cashion prior to the hearing held on November 9, 2018, and permitted Dr. Cantor and Dr. Johnson to submit supplemental expert reports based upon Cashion's testimony.

The hearing on class certification concluded on November 20, 2018. During that portion of the hearing, Dr. Cantor and Dr. Johnson each addressed the court and counsel made summations. The parties and their experts used the majority of the three-day class certification hearing to address whether Cole's Wexford satisfied the predominance standard of Rule 23(b)(3), i.e., whether Dr. Cantor's expert report set forth a reliable methodology for proving class-wide antitrust impact and damages. In light of the diametrically opposing views of the parties and the difficult economic issues raised by their arguments, the court determined a technical advisor was necessary to assist the court's understanding about the reliability of Dr. Cantor's proposed methodology. See In re Domestic Drywall Antitrust Litig., 322 F.R.D. 188, 194 (E.D. Pa. 2017).

The parties each filed supplemental briefs with respect to the applicable standards under Rule 23 and the questions to be posed to the technical advisor. (ECF Nos. 601, 602.) The parties did not agree on an individual to serve as the technical advisor. The court, therefore, appointed Christopher Garmon, Ph.D. ("Dr. Garmon") to serve as technical advisor to the court. (ECF No. 619.) A report by the technical advisor is forthcoming and

3

will address whether the "'methodology' for proving class-wide antitrust impact that was proposed by Cole's Wexford Hotel, Inc. and its expert, Robin Cantor, Ph.D., is a *reliable* methodology in the field of economics…." (ECF No. 619 at 1 (emphasis added).)

For the reasons set forth in this memorandum opinion, the motion to certify class (ECF No. 525) will be denied as premature. During the class certification hearing, the court inquired whether Highmark was challenging Dr. Cantor's report and testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ("Daubert"). Highmark's counsel vigorously asserted that it was not doing so and argued that a Daubert analysis was not required. The court requested briefing on that issue. In the briefing, (ECF Nos. 601, 602), neither party identified the proper process a court is to utilize when a challenge to the reliability of an expert's methodology is raised during class certification procedures. As more fully discussed below, the court as part of its "rigorous analysis" of the evidence must determine whether the expert evidence presented by Cole's Wexford would be admissible at trial under the standards set forth in Federal Rules of Evidence 701 and 702 and Daubert. In re Blood Reagents Antitrust Litig., 783 F.3d 183, 187 (3d Cir. 2015); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 323 (3d Cir. 2008).

## II. Discussion

### A. Applicable Law

#### 1. In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305 (3d Cir. 2008)

In Hydrogen Peroxide, the plaintiffs, who were "[p]urchasers of hydrogen peroxide and related chemical products" sued the defendants, who were chemical manufacturers, for engaging in a horizontal price-fixing conspiracy in violation of § 1 of the Sherman Act and §

4

4 of the Clayton Act. Hydrogen Peroxide, 552 F.3d at 307-08. The plaintiffs filed a motion to certify class relying in part on the opinions of an economist. Id. at 308. The defendants in opposition to the motion to certify class offered the opinions of a different economist. Id. The defendants also filed a motion to exclude the opinions of the plaintiffs' expert under Daubert, which the court denied. Id. The defendants did not appeal the district court's decision with respect to Daubert. Id. at 315 n.13.

The district court found the plaintiffs satisfied the requirements of Rule 23(a), and the defendants did not appeal that portion of the district court's decision. Hydrogen Peroxide, 552 F.3d at 310. Like Cole's Wexford, the plaintiffs in Hydrogen Peroxide sought class certification under Rule 23(b)(3), the "twin requirements" of which are predominance and superiority. Id. at 310. The defendants appealed to the court of appeals the district court's finding that the predominance requirement was met. Id. The defendants argued the district court committed three errors: (1) it applied too lenient a standard of proof to class certification; (2) it did not "meaningfully" consider the defendants' expert's opinion; and (3) it applied the presumption of antitrust impact set forth in Bogosian v. Gulf Oil Corp., 561 F.2d 434, 454 (3d Cir. 1977). Hydrogen Peroxide, 552 F.3d at 312.

The court of appeals first rejected the district court's statement of the applicable standards under Rule 23 and held the case would be remanded on that basis. Id. at 322. According to the district court, the plaintiffs were required to make only a "threshold showing" with respect to predominance. Id. at 321. The court of appeals disagreed:

> A "threshold showing" could signify, incorrectly, that the burden on the party seeking certification is a lenient one (such as a prima facie showing or a burden of production) or that the party seeking certification receives deference or a presumption in its favor. So defined, "threshold showing" is an inadequate and improper standard. "[T]he requirements of Rule 23 must be met, not just

5

supported by some evidence." IPO, 471 F.3d at 33; see e.g., id. at 40, 42 (rejecting the view that a party seeking certification need only make "some showing" with respect to the Rule 23 requirements).

Id. The court of appeals also rejected the district court's statement that in a case alleging a horizontal price-fixing conspiracy the district court when in doubt should err in favor of certifying a class. Id. at 321-22. The court of appeals explained: "These statements invite error. Although the trial court has discretion to grant or deny class certification, the court should not suppress 'doubt' as to whether a Rule 23 requirement is met-no matter the area of substantive law." Hydrogen Peroxide, 552 F.3d at 321.

Second, the court addressed the defendants' argument that the district court erred by failing to consider the testimony of the defendants' expert economist. Id. at 322. The district court—after denying the Daubert motion—found it improper to weigh the opinions of the defendants' expert against the opinions of the plaintiffs' expert, i.e., the district court "apparently believed it was barred from resolving disputes between the plaintiffs' and defendants' experts." Id. at 322, 325. The court of appeals disagreed:

> Resolving expert disputes in order to determine whether a class certification requirement has been met is always a task for the court-no matter whether a dispute might appear to implicate the "credibility" of one or more experts, a matter resembling those usually reserved for a trier of fact. Rigorous analysis need not be hampered by a concern for avoiding credibility issues; as noted, findings with respect to class certification do not bind the ultimate fact-finder on the merits. A court's determination that an expert's opinion is persuasive or unpersuasive on a Rule 23 requirement does not preclude a different view at the merits stage of the case.
> 
> …
> 
> Rule 23 calls for consideration of all relevant evidence and arguments, including relevant expert testimony of the parties.

Id. at 324-25. The court of appeals on that basis vacated the order certifying the class and remanded the case to the district court. Id. at 325.

With respect to the defendants' third argument that the district court erred by concluding the predominance requirement of Rule 23 was met based upon the Bogosian presumption of antitrust impact, the court of appeals explained that there was conflicting evidence presented to the district court about whether the presumption applied to the facts of the case. Hydrogen Peroxide, 552 F.3d at 326. It was not apparent to the court of appeals that the district court considered all the relevant evidence with respect to the issue. Id. The court of appeals held: "The District Court, upon review of all the evidence consistent with this opinion, may again consider whether the reasoning in Bogosian is compatible with the record of this case." Id. at 326-27. The court of appeals vacated the class certification order and remanded the case to the district court for further proceedings consistent with the court's opinion. Id. at 327.

### 2. In re Blood Reagents Antitrust Litigation, 783 F.3d 183 (3d Cir. 2015)

In In re Blood, the plaintiffs, who were "direct purchasers of…products used to test blood compatibility between donors and recipients[,]" sued the defendants, who were the sellers of those products, for entering into a horizontal price-fixing conspiracy in violation of § 1 of the Sherman Act and § 4 of the Clayton Act. In re Blood, 783 F.3d at 185. The plaintiffs filed a motion to certify class and the court held a hearing on the motion. Id. The plaintiffs with respect to their motion to certify class relied *mostly* on expert testimony to prove antitrust impact was provable on a class-wide basis. Id. at 188 ("[P]laintiffs relied on expert testimony to produce most of their antitrust impact analyses and damages models…."). The defendant opposing the class certification[4] challenged the reliability of the

---

[4] The court preliminarily approved the plaintiffs' settlement with one of the two defendant-sellers prior to deciding the class certification issues. In re Blood, 783 F.3d at 185.

expert opinions proffered by the plaintiffs and the sufficiency of the evidence under Rule 23. Id. at 188. The district court rejected the defendant's arguments and granted the motion to certify class. Id. at 185. The district court, which relied upon Behrend v. Comcast Corp., 655 F.3d 182 (3d Cir. 2011) ("Behrend"), explained that the plaintiffs' expert's testimony "'could evolve to become admissible evidence' at trial." In re Blood, 783 F.3d at 185 (quoting In re Blood Reagents Antitrust Litig., 283 F.R.D. 222, 240 (E.D. Pa. 2012)). The district court also rejected the defendant's arguments about "'the reliability of plaintiffs' damages models.'" Id. at 186.

On appeal, the defendant raised two issues. First, the defendant argued that the district court erred by "declining to address at class certification whether plaintiffs' damages models were capable of producing just and reasonable damage estimates at trial." Id. at 186. Specifically, the defendant, citing to Comcast Corp. v. Behrend, 569 U.S. 27 (2013) ("Comcast"), argued that the "plaintiffs' expert's methodologies…[could not] prove antitrust impact as a matter of law because they…[were] incapable of distinguishing lawful price increases resulting from the creation of a duopoly from price increases resulting from the alleged price-fixing conspiracy." In re Blood, 783 F.3d at 186 n.4. Second, the defendant argued that the district court erred because it did not determine whether the plaintiffs' expert's opinions were admissible under Daubert. Id. at 186. With respect to the first issue, the court of appeals remanded the case because the "'could evolve' formulation of the Rule 23 standard" relied upon by the district court was no longer good law in light of the Court's decision in Comcast. Id. at 186-87.

With respect to the second issue, the court held:

> We join certain of our sister courts to hold that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in Daubert.

Id. at 187. The court of appeals explained the plaintiff's burden at the class certification stage is to prove "through evidentiary proof" that "there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." Id. Thus, the "rigorous analysis" of the evidence required at the class certification stage includes a determination about whether the expert testimony relied upon to prove the elements of Rule 23 is admissible evidence under Daubert. In re Blood, 783 F.3d at 187-88. The court explained:

> Expert testimony that is insufficiently reliable to satisfy the Daubert standard cannot "prove" that the Rule 23(a) prerequisites have been met "in fact," nor can it establish "through evidentiary proof" that Rule 23(b) is satisfied.

Id. at 187 (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011)). The Daubert inquiry is "'especially important…when a party opposing class certification offers expert opinion…[because the district court] may be persuaded by the testimony of either (or neither) party's expert with respect to whether a certification requirement is met.'" Id. at 188 n.10 (quoting Hydrogen Peroxide, 552 F.3d at 312).

The court of appeals remanded the case with the following instructions:

> Because…[the defendant] consistently challenged the reliability of plaintiffs' expert's methodologies and the sufficiency of his testimony to satisfy Rule 23(b)(3), we leave it to the District Court on remand to decide in the first instance which of…[the defendant's] reliability attacks, if any, challenge those aspects of plaintiffs' expert testimony offered to satisfy Rule 23 and then, if necessary, to conduct a Daubert inquiry **before** assessing whether the requirements of Rule 23 have been met.

Id. at 188 (emphasis added). The court of appeals explained that the Daubert inquiry should be limited to "expert testimony offered to prove satisfaction of Rule 23's requirements." Id. at 188 n.8. The court of appeals rejected the plaintiffs' argument that the defendant waived the opportunity to raise a Daubert challenge because the defendant in the district court "consistently challenged the reliability of [the] plaintiffs' expert's models *and* the sufficiency of his testimony to satisfy Rule 23(b)(3)." In re Blood, 783 F.3d at 188 n.9 (emphasis added).

### B. Analysis

Cole's Wexford relies solely upon the expert opinions of Dr. Cantor to prove that the predominance requirement of Rule 23(b)(3) is satisfied, i.e., antitrust impact and damages are capable of proof on a class-wide basis. Highmark in support of its opposition to class certification presented the opinions of Dr. Johnson to prove, among other things, that the proposed methodology set forth by Dr. Cantor is not *reliable*. Highmark, however, did not file a Daubert motion challenging the qualifications of Dr. Cantor or the fit or *reliability* of her opinions.

The court—after reviewing the parties' submissions (including the expert reports authored by Dr. Cantor and Dr. Johnson) and presiding over the presentation of concurrent expert evidence—recognizes that: (1) Highmark's arguments in opposition to class certification, which were based upon Dr. Johnson's opinion, raised issues about the *reliability* of Dr. Cantor's methodology; and (2) the court must determine whether Dr. Cantor's methodology is reliable under Daubert before considering that methodology in its assessment of the sufficiency of the evidence under Rule 23(b)(3). (H.T. 11/20/2018 (ECF No. 621) at

158-59.)[5] In other words, if the court finds the expert opinions of Dr. Cantor are unreliable under Daubert, and, thus, inadmissible at trial, Cole's Wexford cannot rely upon that evidence in support of its motion to certify class under Rule 23. (Id.)

Counsel for Highmark argued to the court that under Hydrogen Peroxide the court at the class certification stage is required to make a determination about the *sufficiency* of the

---

[5] At the class certification hearing, the following exchange occurred between the court and counsel for Highmark:

> THE COURT: So, that's sort of a Daubert, kind of a Daubert issue. But if there is a proper methodology here and there's some evidence out there that you can use to support that, then that's where I could weigh in. But if you don't have a reliable method, I just throw out the expert reports to begin with and, therefore, there isn't any issue and the ability to find common evidence. I think it's more fundamental than you are thinking, at least from what I'm understanding your attack is here. If it's just there is no evidence, you are actually attacking there is no methodology.
>
> [HIGHMARK'S COUNSEL]: Correct.
>
> THE COURT: Am I wrong about that?
>
> [HIGHMARK'S COUNSEL]: No. You're not. There is no methodology and the law requires there to be one. That's the easiest [way] to get rid of the case.
>
> THE COURT: That's sort of like the Daubert issue. You're attacking…[if] there a methodology. You don't even go down the road looking for capable of proof because…the expert's report is worthless.
> …
> THE COURT: Will you have to…meet a threshold Daubert standard for me to even consider the plaintiff's report[?] Because if there is no methodology, then you don't even bother with capable of proof [issue] because they haven't shown a methodology to show anything could be capable.
>
> [HIGHMARK'S COUNSEL]: They have shown a theoretical way that they could establish impact at a trial. That's not a methodology that can support class certification. We will brief that.

(H.T. 11/20/2018 (ECF No. 621) at 158-60.)

evidence presented to satisfy the requirements of Rule 23(b)(3). (H.T. 11/20/2018 (ECF No. 621) at 157; ECF No. 601 at 5-7.) The court agrees with Highmark that Cole's Wexford must demonstrate through evidentiary proof that antitrust impact is "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 552 F.3d at 311-12. Resolution of a motion to certify class demands a "rigorous assessment of the available evidence[,]" which in this case includes a "rigorous assessment of… the method or methods by which…[Cole's Wexford] propose[s] to use the evidence to prove impact at trial." Id. at 321.

Counsel for Highmark, however, erroneously argued to the court that a Daubert reliability inquiry is not a part of the court's analysis about the *sufficiency* of the evidence under Hydrogen Peroxide. (H.T. 11/20/2018 (ECF No. 621) at 155-5.)[6] Highmark on at least two occasions represented to the court that was not challenging Dr. Cantor's opinions as unreliable and thus inadmissible under Daubert. (ECF No. 601 at 7-8; H.T. 11/20/2018 (ECF

---

[6]  Counsel for Highmark at the conclusion of the class certification hearing explained:

It's not a Daubert issue, as Third Circuit cases have said. We didn't file a Daubert motion. You don't have to decide that in this case. Hydrogen Peroxide says they have evidence, we have evidence. You have to decide this by a preponderance of the evidence. And you can't just say the jury might decide that this is, it's not a reliability question. It's a preponderance of the evidence. That is the entire point of Hydrogen Peroxide.
…
It's not about reliability. That's a Daubert inquiry. You can say, okay, well, this is reliable, but it doesn't establish. It doesn't constitute. But you don't have any actual evidence here of what they plan to do. You do not have a methodology.
…
Well, we're not, we're not saying that what she's saying is junk science. I don't see a Daubert, I don't see reliability, as the issue that Hydrogen Peroxide brought clarity to.

(H.T. 11/20/2018 (ECF No. 621) at 155-57.)

12

No. 621) at 156-57.) According to Highmark, whether it "move[d] to exclude Dr. Cantor's opinion[s] as unreliable…is *irrelevant* to a consideration of whether it suffices to show that antitrust impact is capable of proof using common evidence." (ECF No. 601 at 8 (emphasis added)). Highmark, however, titled the second major heading of its brief in opposition to certify class as follows:

> COLE'S DID NOT DEMONSTRATE THAT IT HAS A **RELIABLE** METHOD TO ESTABLISH CLASS-WIDE IMPACT.

(ECF No. 547 at 2 (emphasis added).) At the hearing on class certification, counsel for Highmark and Dr. Johnson argued to the court that Dr. Cantor's proposed methodology is not reliable. (H.T. 9/19/2018 (ECF No. 587) at 69) (counsel for Highmark arguing that "Dr. Cantor has not identified a reliable method capable of common proof to show that that alleged increase in healthcare costs automatically increased base rates and an increase in base rates automatically increased premiums. She has no method that shows that."); (H.T. 9/19/2018 (ECF No. 587) at 170-71 (Dr. Johnson arguing "There's no method here. This is a series of connected dots that are really not connected at all. It's not reliable. It's not enough. It doesn't actually tell you what you need to know, which is whether or not impact can be demonstrated to common proof.").

As this court explained at the conclusion of the class certification hearing and as set forth in In re Blood, Daubert issues *are* relevant at class certification. (H.T. 11/20/2018 (ECF No. 621) at 159.) The court will not assume Dr. Cantor's opinions are admissible in order to decide the motion to certify class. The court *must* undertake a rigorous analysis of the evidence, which includes a threshold determination under Daubert about whether the evidence is admissible at trial. If so, then the court will determine whether Cole's Wexford

satisfied its burden to show, among other things, that antitrust impact is capable of proof at trial via evidence common to the class. In re Blood, 783 F.3d at 187.

Counsel for Highmark is correct that Daubert was not an issue in Hydrogen Peroxide. In that case, the defendants filed a Daubert motion, which the district court denied, and the defendants did not appeal that decision to the court of appeals. Hydrogen Peroxide, 552 F.3d at 315 n.13. The expert evidence analyzed by the court of appeals, therefore, was already held to be admissible by the district court. Id. In this case, however, Highmark requests the court to determine that Dr. Cantor's opinions are unreliable under Rule 23 standards without first subjecting it to a Daubert analysis. Under In re Blood, to which neither party cites, however, the court must find that expert testimony that is "critical to class certification" satisfies the standard set forth in Daubert in order to "demonstrate conformity with Rule 23." In re Blood, 783 F.3d at 187. The Daubert inquiry is "especially important" here because Highmark offered Dr. Johnson's opinions, which challenged the reliability of Dr. Cantor's opinions. Id. at 188 n.10 (quoting Hydrogen Peroxide, 552 F.3d at 323).

The court of appeals in In re Blood instructed the district court on remand to: (1) determine which of the defendant's "reliability attacks" challenged the aspects of the plaintiffs' expert's opinions with respect to the requirements of Rule 23; and (2) then, if necessary, "conduct a Daubert inquiry **before** assessing whether the requirements of Rule 23 have been met." In re Blood, 783 F.3d at 188 (emphasis added); see Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc., 321 F.R.D. 193, 201 (E.D. Pa. 2017) (citing to In re Blood and explaining: "this Court first resolves the Daubert Motions before proceeding to the Class Motion"); Abraham v. Ocwen Loan Servicing, LLC, 321 F.R.D. 125, 150 (E.D. Pa. 2017) (citing to In re Blood and deciding the defendant's Daubert motion prior to deciding the

14

motion to certify class); In re Pharmacy Benefit Managers Antitrust Litig., No. CV 03-4730, 2017 WL 275398, at *16 (E.D. Pa. Jan. 18, 2017) (citing In re Blood and deciding whether expert testimony offered in support of a motion to certify class was admissible under Daubert before considering the merits of the motion to certify class); In re Processed Egg Prod. Antitrust Litig., 312 F.R.D. 124, 151 (E.D. Pa. 2015) (citing In re Blood and recognizing that "[t]o certify a class based on Dr. Stiegert's testimony, the Court would have to first consider whether Dr. Stiegert's testimony meets the standards set forth in Daubert").

Here, with respect to the first step, from the hearing already conducted it is clear that Highmark is challenging the reliability of Dr. Cantor's proposed methodology that Cole's Wexford intends to use at trial to show via evidence common to the proposed class that the proposed class suffered antitrust impact and damages. Under those circumstances, the court must proceed to step two and conduct a Daubert inquiry to determine whether Dr. Cantor's proposed methodology to prove class-wide antitrust impact and damages is admissible under Rules 701 and 702.

Based upon the foregoing, the motion to certify class (ECF No. 525) will be denied as premature because the parties did not address Daubert in their briefing with respect to class certification or cite to evidence of record in support of the Daubert requirements. The court must first determine whether Dr. Cantor's opinions are admissible under Daubert. An order setting forth the schedule for filing Daubert motions[7] will accompany this memorandum opinion. As soon as is practicable, the technical advisor's report, which may address issues concerning the reliability of Dr. Cantor's proposed methodology, will be filed on the docket.

---

[7] Cole's Wexford may challenge the opinions offered by Dr. Johnson under Daubert.

The technical advisor's report may inform the parties' Daubert briefing. The court will hold a Daubert hearing in this case at which the technical advisor will be present. The parties may cite to the transcripts from the class certification hearing in support of their Daubert motions. The parties shall meet and confer with respect to whether Dr. Cantor and Dr. Johnson should be present at the Daubert hearing.

This court is concerned with the age of this case and achieving an expeditious resolution of the case. The court is also mindful of the expense to the parties, but cannot resolve the motion to certify class without first conducting a Daubert inquiry. Highmark repeatedly represented that it was not attacking Dr. Cantor's opinions under Daubert, but Dr. Johnson's report and testimony, as well as Highmark's arguments, belie that assertion. Cole's Wexford, therefore, will be provided a fair opportunity to prove that Dr. Cantor and her opinions satisfy the Daubert standard. If successful, the court will then entertain a renewed motion to certify class.

Appropriate orders denying as premature the motion to certify class and setting forth the schedule for filing motions to challenge the qualifications of any proposed expert witness will be entered.

BY THE COURT,

Dated: March 1, 2019

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge